The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY

January 28, 2021

**2021COA6**

**No. 18CA0775, *People v. Abad* — Crimes — Sexual Exploitation of a Child; Constitutional Law — Fifth Amendment — Double Jeopardy — Multiplicity; Evidence — Authentication — Hearsay**

The prosecution charged the defendant with nine different counts of sexual exploitation of a child under section 18-6-403(3)(b.5), C.R.S. 2020, based on his possession of photos found in a Dropbox account and photos and videos found on two phones that police recovered from his bedroom. On direct appeal, a division of the court of appeals considers the defendant's contentions that the district court erred by (1) admitting unauthenticated evidence from a Dropbox account and two cell phones; (2) admitting hearsay testimony from two cell phone extraction reports; and (3) entering multiplicitous convictions in violation of double jeopardy.

The division finds no error as to issues one and two. As to issue three, the division concludes that where the evidence adduced at trial did not establish factually distinct acts of possession, the defendant's convictions are multiplicitous and violate double jeopardy.

Consistent with *People v. Bott*, 2020 CO 86, the division concludes that simultaneous possession of any number of sexually exploitative items exceeding twenty constitutes a single offense. Extending *Bott*, the division concludes that simultaneous possession of more than one sexually exploitative video constitutes a single offense. Finally, the division concludes that the fact that the sexually exploitative material was found on three different electronic devices or storage sites, standing alone, does not establish factually distinct offenses justifying multiple convictions and punishments. Accordingly, the division merges the defendant's convictions and remands for resentencing.

COLORADO COURT OF APPEALS     **2021COA6**

Court of Appeals No. 18CA0775
Jefferson County District Court No. 16CR3216
Honorable Christopher C. Zenisek, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Zachariah Andrew Abad,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE BROWN
Dunn and Freyre, JJ., concur

Announced January 28, 2021

Philip J. Weiser, Attorney General, Brittany L. Limes, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Meredith Rose, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     A jury convicted defendant, Zachariah Andrew Abad, of nine counts of sexual exploitation of a child. On appeal, he contends that the district court erred by (1) admitting unauthenticated evidence from a Dropbox account and two cell phones; (2) admitting hearsay testimony from two cell phone extraction reports; and (3) entering multiplicitous convictions in violation of double jeopardy.

¶ 2     In resolving Abad's third contention, *infra* Part III, we must apply the Colorado Supreme Court's recent decision in *People v. Bott*, 2020 CO 86 (*Bott II*), and decide two related matters of first impression. Consistent with *Bott II*, we conclude that simultaneous possession of more than twenty items of sexually exploitative material constitutes a single offense under section 18-6-403(3)(b.5), C.R.S. 2020. Extending the rationale of *Bott II*, we conclude that simultaneous possession of multiple sexually exploitative videos constitutes a single offense under section 18-6-403(3)(b.5). And we conclude that the fact that sexually exploitative material was found on three different electronic devices or storage sites, standing alone, does not establish factually distinct offenses justifying multiple convictions and punishments.

1

¶ 3     Consequently, we conclude that Abad's convictions are multiplicitous and violate double jeopardy.  Accordingly, we merge his convictions and remand for resentencing, if necessary.  We otherwise affirm the judgment.

## I.    Factual Background

¶ 4     Investigator Kevin Donahue of the Jefferson County Sheriff's Office Crimes Against Children Unit received a cyber tip from the National Center for Missing and Exploited Children (NCMEC) about photographs uploaded to a Dropbox account.  The NCMEC believed the photographs were sexually exploitative images of children.  The NCMEC provided Donahue a Yahoo email address and a list of IP addresses associated with the Dropbox account.

¶ 5     Based on this information, Donahue sent requests for production of records to, among others, Dropbox, Comcast, and Yahoo.  In response, Yahoo produced subscriber information that included a phone number.  Donahue ran the phone number through law enforcement databases and was able to link the number to Abad and obtain his address.

¶ 6     Once Donahue learned that Abad lived in Arvada, he transferred the case to the Arvada Police Department.  The

information Donahue provided formed the basis for a search warrant. During the search of Abad's house, police officers seized two cell phones from Abad's bedroom — a Samsung Galaxy S-III (the S-III) and a Samsung Galaxy S-IV (the S-IV). The police downloaded the contents of the cell phones and found sexually exploitative images and videos of children on each device.

¶ 7   The prosecution charged Abad with nine class 4 felony counts of sexual exploitation of a child, based on his alleged possession of the photos found in Dropbox and the photos and videos found on the two phones. As detailed *infra* Part III.A, the jury convicted Abad of eight class 4 felonies and one class 6 felony. The district court sentenced him to six years each on the class 4 felonies and eighteen months on the class 6 felony, all sentences to run concurrently.

## II.   Admissibility of Evidence

### A.   Standard of Review

¶ 8   We review all evidentiary rulings for an abuse of discretion. *People v. Glover*, 2015 COA 16, ¶ 10. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *Campbell v. People*, 2019 CO 66, ¶ 21; *People v. Jefferson*, 2017 CO 35, ¶ 25.

## B.    Dropbox Evidence

¶ 9    Abad contends that the district court erred by admitting the images found in Dropbox because they were not properly authenticated.  We disagree.

### 1.    Additional Factual Background

¶ 10    At trial, Donahue testified that after he received the cyber tip from the NCMEC about a particular Dropbox account that might contain sexually exploitative material, he sent a request for production of records — "basically a search warrant for business records" — to Dropbox "for the subscriber information and content of that Dropbox account."  Dropbox responded with the subscriber information for the account, which included Abad's name, an email address, and a list of IP addresses.[1]  Dropbox also sent a thumb drive "that contained the contents of [the account]."  Donahue followed instructions to decrypt and view the thumb drive's contents.  Then he copied the contents of the thumb drive onto a disc.

---

[1] The prosecution did not admit the Dropbox subscriber evidence for the truth of the matter asserted but instead to explain Donahue's investigation.

¶ 11    When the prosecutor asked Donahue what he found on the thumb drive, Abad's attorney objected based on lack of authentication.  In response, the district court ruled that the prosecutor could lay more foundation to show that the evidence was what the prosecution purported it to be — "information returned from Dropbox pursuant to [Donahue's] investigation."

¶ 12    Donahue then explained that he had reviewed the disc's contents before trial and they were "a fair and accurate representation of what [he] received from Dropbox."  And he testified that the files on the thumb drive and disc contained several folders holding hundreds of images and videos of children engaged in sexual acts with adults.  The court admitted the disc of Dropbox contents (People's Exhibit 3) into evidence without objection from Abad's attorney.

¶ 13    The prosecutor then offered twenty-three printed images (People's Exhibits 3-1 through 3-23) as evidence of the sexually exploitative material from the Dropbox account.  Donahue testified that the printed images were "fair and accurate representations of the materials [he] received from Dropbox."  Abad's attorney objected

to their admission based on lack of authentication, but the court overruled the objection and admitted them into evidence.

¶ 14    Later, the prosecution qualified Michael Roemer, a detective with the Arvada Police Department, as an expert in Cellebrite software, which the Arvada Police used to download information from Abad's cell phones. He testified that once a cell phone has been downloaded and information from the phone has been extracted, he is trained to look at the extracted information, including images, text messages, and chats. He testified that some of the sexually exploitative images extracted from the S-IV were the same as those on the disc from Dropbox. He testified that some file path names on the extraction report from the cell phones contained the word "Dropbox." And he testified that he viewed chats in the extraction report that had been downloaded from a messaging app, which involved Abad and several others, referenced viewing "nudes of 12- to 17-year-old females," discussed sharing images, and included links to Dropbox posted into the chat.

### 2.    Applicable Law

¶ 15    Authenticity is a condition precedent to admissibility. CRE 901(a). The condition "is satisfied by evidence sufficient to support

6

a finding that the matter in question is what its proponent claims." *Id.*; *People v. N.T.B.*, 2019 COA 150, ¶ 16. The burden to authenticate evidence is low — only a prima facie showing is required. *Gonzales v. People*, 2020 CO 71, ¶ 27. "Once the proponent meets this burden, the actual authenticity of the evidence and the effect of any defects go to the weight of evidence and not its admissibility." *N.T.B.*, ¶ 16.

¶ 16    Although CRE 901(b) sets forth nonexhaustive examples of ways to authenticate evidence, it does not establish the nature or quantity of proof required or prescribe any exclusive method for authenticating evidence. *Gonzales*, ¶ 30; *N.T.B.*, ¶ 17.

> Because the rule's plain language instructs that a proponent need only provide sufficient evidence to support a finding that the proffered evidence is what the proponent claims, the rule vests trial courts with broad discretion to consider a variety of foundational circumstances depending on the nature of the proffered evidence.

*Gonzales*, ¶ 30; *see also Colo. Citizens for Ethics in Gov't v. Comm. for Am. Dream*, 187 P.3d 1207, 1213 (Colo. App. 2008) ("Whether a proper foundation has been established is a matter within the

sound discretion of the trial court, whose decision will not be disturbed absent a clear abuse of discretion.").

### 3. The Dropbox Images Were Properly Authenticated

¶ 17 Electronic evidence may be authenticated in several different ways under CRE 901, including through the testimony of a witness with knowledge that the evidence is what it is claimed to be and through circumstantial evidence. *See People v. Hamilton*, 2019 COA 101, ¶ 36; *Glover*, ¶ 25. Information from Dropbox and other similar cloud-based storage providers, however, presents unique challenges in that it lacks readily identifiable characteristics that often make authentication under CRE 901 possible. *N.T.B.*, ¶ 20. "Specifically, files uploaded to remote servers are not necessarily shared with other users, which forecloses the opportunity for a recipient to authenticate them. And cloud storage providers may not require detailed profiles of their users, which eliminates another avenue to corroborate ownership of the account's contents." *Id.*

¶ 18 Still, as noted, the standard for authentication is low. *Gonzales*, ¶ 27. Once the proponent makes a prima facie showing, the ultimate determination of whether the evidence is, in fact, authentic rests with the jury. *Id.* at ¶ 43; *accord N.T.B.*, ¶ 16.

¶ 19      At trial, the prosecution claimed that the printed images it sought to introduce were sexually exploitative images of children sent to Donahue by Dropbox. When it overruled Abad's authentication objection, the district court understood the evidence being offered was "information returned from Dropbox pursuant to [Donahue's] investigation."[2]

¶ 20      Donahue's testimony was sufficient to authenticate the printed images as sexually exploitative images of children from a Dropbox account, which Dropbox sent to Donahue. First, Donahue testified that he sent a request for production to Dropbox for subscriber information and the content of the Dropbox account associated with the NCMEC cyber tip. Then, he testified he received a thumb drive from Dropbox and viewed its contents. Next, he testified that he copied the contents of the thumb drive to a disc, that he viewed the contents of the disc before trial, and that the contents of the disc were a fair and accurate representation of what he received from

---

[2] On appeal, the People contend that the images Donahue authenticated at trial were "child pornography contained in a Dropbox account *associated with Abad*." (Emphasis added.) That is not how the prosecution characterized the evidence at trial, however, and our review is necessarily limited to the district court's ruling on the evidence as it was admitted.

Dropbox. The district court admitted into evidence the disc containing the entire contents of the Dropbox account. Abad's attorney did not object. Finally, Donahue testified that the printed images the prosecution sought to introduce were fair and accurate representations of the materials he received from Dropbox.

¶ 21    Considering this evidence collectively, we conclude that the district court did not err by finding that the printed images were what the prosecution claimed they were — fair and accurate representations of the materials Dropbox sent to Donahue. *See N.T.B.*, ¶ 18 ("[W]here a law enforcement investigator possesses personal knowledge that proffered evidence was produced in response to a search warrant, courts have allowed the investigator to authenticate that evidence."). Accordingly, the district court did not abuse its discretion by admitting the Dropbox images.[3]

---

[3] It is worth noting that whether the evidence was *sufficient* for the jury to find beyond a reasonable doubt that Abad controlled the Dropbox account or possessed images contained in it is a separate question. Abad argues on appeal that there was insufficient evidence to support a conclusion by a reasonable person that he was guilty beyond a reasonable doubt as to the count associated with Dropbox. *See People v. Brassfield*, 652 P.2d 588, 592 (Colo. 1982). But the premise underlying his argument is that the Dropbox images should not have been admitted. He argues that we

## C. Cell Phone Evidence

¶ 22 Abad contends that the district court erred by admitting certain evidence related to the S-III and S-IV. Specifically, he argues that (1) the cell phone extraction reports and the images and videos from the phones were not properly authenticated and (2) the extraction reports and witness testimony about the content of the extraction reports were hearsay. We reject these contentions.

### 1. Additional Factual Background

¶ 23 During the search of Abad's house, the police seized two cell phones from Abad's bedroom, the S-III and the S-IV. After the phones were logged into evidence at the police station, Detective Renee Beale, who was the lead detective on the case at the time, downloaded the contents of the cell phones. Beale downloaded the S-III on her own. Sergeant Amity Losey, who took over the

---

should "not consider inadmissible evidence in determining whether sufficient evidence" supported his conviction. We disagree. *See People v. Hard*, 2014 COA 132, ¶ 39 ("In assessing the sufficiency of the evidence, we must consider all the evidence admitted at trial, including the erroneously admitted evidence . . . ."). Nonetheless, we have concluded that the Dropbox images were properly authenticated, which is Abad's only appellate challenge to their admission. And Abad does not argue that the evidence was insufficient if the Dropbox images are considered.

investigation after Beale retired for medical reasons, assisted Beale in downloading the S-IV.

¶ 24 To download a cell phone, the police plug the phone into a computer, and specialized computer software extracts all available data from the phone and creates an extraction report. After describing this standard download process, Losey testified — without objection — that the police downloaded the data from Abad's phones in the same way they download data from phones in "every other case."

¶ 25 Then Roemer, the Cellebrite expert, explained that the Arvada Police Department has been using the Cellebrite software to extract data from phones since 2009. He explained that an extraction report may contain, among other things, user information, phone and chat logs, text and multimedia messages, emails, images, videos, file path information, and dates that files were downloaded. The software may also be able to extract information that has been deleted from the phone.

¶ 26 Losey reviewed the complete extraction report for the S-III. She testified that there were 22,418 total images on the S-III, which included images of children engaging in sexual acts. She testified

about a video on the device titled "13 Y/O sex" and described its contents.  She also testified as to the names of other videos that had been deleted from the phone.  Abad's attorney objected to Losey's testimony describing the content of the images and video based on the "best evidence rule" and to the titles of the videos as hearsay.  The district court overruled the objections.

¶ 27     The prosecutor then moved to admit three pages of the S-III extraction report (People's Exhibit 2), which reflected when the phone was downloaded, the serial number of the phone, the device user name and photograph, and email addresses and user names associated with the phone and various apps on the phone.  Abad's attorney did not object.

¶ 28     The prosecutor also offered twenty-eight printed images (People's Exhibits 2-1 through 2-26, 2-28, and 2-29) as evidence of the sexually exploitative material from the S-III.  Losey testified that the images were fair and accurate representations of photographs she previously viewed in the complete extraction report for the S-III.  Abad's attorney did not object.

¶ 29     Detective Kevin Westbrook assisted in executing the search warrant at Abad's residence and recovering Abad's two cell phones.

He testified without objection that the phones were placed into evidence at the Arvada Police Department and that they "were, in fact, later downloaded."

¶ 30    Westbrook also testified that he reviewed the complete extraction report for the S-IV. He said the total number of images on the two phones exceeded 74,000 and that approximately 9,000 images were identified as "child pornography." He could not recall how many sexually exploitative videos were on the phones but testified that five videos from the S-IV were downloaded for use in this case. Abad's attorney objected on several grounds and the objections were overruled.

¶ 31    The prosecutor offered twenty-two printed images (People's Exhibits 1-1 through 1-22) as evidence of the sexually exploitative material from the S-IV. Westbrook testified that the images were fair and accurate representations of images downloaded from the S-IV that depicted children "engaged in graphic sexual acts with either other children or with adults." Abad's attorney did not object.

¶ 32    The prosecutor offered five discs each containing a sexually exploitative video extracted from the S-IV (People's Exhibits 1-23

through 1-27) and one disc containing a sexually exploitative video extracted from the S-III (People's Exhibit 2-30). Westbrook testified that the videos were fair and accurate representations of the videos downloaded from the S-III and S-IV. Abad's attorney did not object.

¶ 33 The prosecutor moved to admit six pages of the S-IV extraction report (People's Exhibit 1), which reflected the make and model of the phone, a Bluetooth device named "Zachariah Abad," email addresses and usernames associated with various accounts and apps on the phone, and searched terms. Abad's attorney did not object.

¶ 34 Westbrook testified that the partial extraction report reflected a YouTube search conducted on May 12, 2015, for "[IM] a pedophile." Losey and Roemer both testified that they saw this same search on the same day during their reviews of the S-IV extraction report.

¶ 35 Westbrook testified that the partial S-IV extraction report reflected the username "Chocothunde" associated with the phone's KIK messaging app. Losey testified that she viewed a conversation between Chocothunde and others through the KIK app on the S-IV and confirmed specific statements made by Chocothunde and the

15

others engaged in the conversation. Abad's attorney objected to lack of authentication — specifically as to the identity of the users — and to hearsay. The district court determined that the prosecutor had laid a sufficient foundation that the phone belonged to Abad and that the statements made by Chocthunde through the app were Abad's statements. The court ruled that statements by other users were not being offered for their truth, but to provide context for Abad's statements.

¶ 36 Losey testified without further objection to other KIK app communications she viewed in the S-III extraction report between Abad and unknown users. Roemer likewise testified without further objection to other KIK and Snapchat communications he viewed in the S-IV extraction report between Abad and unknown users.

¶ 37 Although he did not call any defense witnesses, Abad admitted two exhibits into evidence during Roemer's cross-examination. First he offered Defense Exhibit B, a partial extraction report from the S-III showing each of the still images admitted by the prosecution (People's Exhibits 2-1 through 2-26, 2-28, and 2-29) and their associated file path information. Second, he offered

Defense Exhibit C, a partial extraction report from the S-IV showing each of the still images admitted by the prosecution (People's Exhibits 1-1 through 1-22) and their associated file path information.

### 2. Authenticity

¶ 38     Abad contends that the district court erred by admitting witness testimony about the contents of the S-III and S-IV extraction reports because the reports were not properly authenticated. He also contends that the district court erred by admitting the images and videos from the S-III and S-IV because they were not properly authenticated. We find no reversible error.

### a. Applicable Law

¶ 39     As noted, the authenticity requirement under CRE 901 is satisfied by a prima facie showing that the matter in question is what its proponent claims. *Gonzales*, ¶ 27; *N.T.B.*, ¶ 16.

### b. Preservation and Standard of Reversal

¶ 40     The People contend that Abad failed to preserve these arguments by failing to object at trial. We agree.

¶ 41     On appeal, Abad contends that the extraction reports were not authenticated because the person who conducted the initial

17

download did not testify about it at trial.  But he fails to identify any part of the record where his attorney lodged a similar objection with the district court.  Losey, Westbrook, and Roemer testified at length about the contents of the extraction reports.  The only "authentication" objection Abad's attorney raised was when Westbrook testified to the number of sexually exploitative images on the two phones.  And although defense counsel used the word "authentication," he did not state the basis for the authentication objection or make any argument similar to the one he advances on appeal.

¶ 42     Abad's attorney also did not object when the prosecution offered the partial extraction reports from the S-III and S-IV into evidence; instead, counsel affirmatively stated, "No objection." Indeed, on appeal Abad clarifies that he "does not challenge the pages of the reports admitted as Exhibits 1 and 2."  Abad's attorney also offered into evidence his own partial extraction reports (Exhibits B and C), which were created from the same data downloaded from the S-III and S-IV.  Abad's attorney likewise did not object when the prosecutor offered into evidence the images and

videos from the S-III or S-IV; instead, counsel affirmatively stated, "No objection."

¶ 43     Because Abad failed to preserve these contentions, if we determine that the district court abused its discretion, we review for plain error. *People v. Hagos*, 2012 CO 63, ¶ 14 ("[W]e review all other errors, constitutional and nonconstitutional, that were not preserved by objection for plain error."); *People v. Devorss*, 277 P.3d 829, 834-35 (Colo. App. 2011). A plain error is (1) obvious; (2) substantial; and (3) undermines the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction. *Romero v. People*, 2017 CO 37, ¶ 6 (citing *Hagos*, ¶ 14). "To qualify as plain error, the error must be one that 'is so clear-cut, so obvious,' a trial judge should be able to avoid it without benefit of objection." *Id.* (citation omitted).

c.     The Extraction Reports

¶ 44     Losey and Westbrook testified that the S-III and S-IV were seized from Abad's bedroom during the search of his home. They testified that the data from the phones was downloaded by the same process used by the Arvada Police in every other case involving extraction of data from cell phones — the phone is

plugged into a computer that extracts all the available data from the phone and creates a comprehensive extraction report. Roemer testified the police use a software called Cellebrite to download the data and create the extraction reports. Although Beale conducted the download of the S-III, Losey and Westbrook both testified, without objection, that they knew the S-III had been downloaded and an extraction report prepared. Losey assisted Beale with the download of the S-IV. And Losey, Westbrook, and Roemer testified at length about the extraction reports without objection (with the single exception noted above).

¶ 45 Given the minimal showing required by CRE 901, had the complete extraction reports for the S-III and S-IV been offered into evidence on this record, the district court would not have abused its discretion by concluding that they were what the prosecution claimed they were — data downloaded from the S-III and S-IV. *See* CRE 901(a). Accordingly, on this same basis, we cannot conclude that the district court abused its discretion by allowing witness testimony about the extraction reports.

¶ 46 But even if we were to conclude that the district court abused its discretion by not sua sponte rejecting witness testimony about

the extraction reports based on lack of authenticity, the error was not plain because it was not obvious. For an error to be so obvious that it qualifies as plain error, "the action challenged on appeal ordinarily 'must contravene (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law.'" *Scott v. People*, 2017 CO 16, ¶ 16 (quoting *People v. Pollard*, 2013 COA 31M, ¶ 40).

¶ 47 Citing *Hamilton*, ¶¶ 36-39, Abad argues: "Someone had to be able to tell the jury, 'I did the download, I followed the proper procedures, the machine that I used and its software were working properly, and I know that these images and videos are accurate replicas of what was stored on the phone.'" But *Hamilton* does not make the purported error obvious because *Hamilton* was announced *after* Abad went to trial. *See People v. Thompson*, 2018 COA 83, ¶ 34 ("Because plain error requires that the error be obvious and any legal principles be 'well settled,' we only consider the status of the law at the time of trial.") (citation omitted), *aff'd on other grounds*, 2020 CO 72; *People v. O'Connell*, 134 P.3d 460, 465 (Colo. App. 2005) ("[W]e will use the status of law at the time of trial in considering whether the trial court committed plain error."). And

21

we do not find *Hamilton* persuasive here.[4]  *See People v. Smoots*, 2013 COA 152, ¶ 21 ("[W]e are not bound by the decisions of other divisions of this court."), *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.  So we perceive no reversible error.

### d. The Images and Videos

¶ 48    Having concluded that the extraction reports were properly authenticated, we also dispose of Abad's unpreserved challenge to the authenticity of the images and videos from the S-III and S-IV.

¶ 49    Losey testified that the printed images offered as People's Exhibits 2-1 through 2-26, 2-28, and 2-29 were "fair and accurate" representations of photographs she viewed on the "download report" for the S-III.  Westbrook testified that the printed images offered as People's Exhibits 1-1 through 1-22 were "fair and accurate representations of the images that were downloaded from" the S-IV.

---

[4] We do not find *People v. Hamilton*, 2019 COA 101, persuasive in part because it establishes an inflexible set of requirements that must be met to authenticate cell phone extraction reports, which appears inconsistent with *Gonzales v. People*, 2020 CO 71, ¶ 39, in which the Colorado Supreme Court recently rejected "adherence to a rigid formula for authentication."  Instead, the supreme court reminded us that the standard for authentication under CRE 901 is "flexible" and "minimal — all that's required is a prima facie showing that the evidence is what its proponent claims."  *Id.* at ¶¶ 39, 42.

Westbrook also testified that the videos offered as People's Exhibits 1-23 through 1-27 and 2-30 were "fair and accurate representations of the videos that were downloaded from" the S-III and S-IV.

¶ 50 We conclude that this evidence is sufficient to make a prima facie showing that the images and videos are what the prosecution claimed — images and videos downloaded from the S-III and S-IV. *See* CRE 901(a); *Gonzales*, ¶ 27. We perceive no abuse of discretion.

### 3. Hearsay

¶ 51 Abad contends that the district court erred by admitting hearsay testimony about the contents of the extraction reports, which he contends included more hearsay. He further contends that the admission of this hearsay evidence violated his confrontation rights. We disagree.

### a. Applicable Law

¶ 52 Hearsay is inadmissible except as provided by the Colorado Rules of Evidence or other applicable statutes or rules. CRE 802; *People v. Buckner*, 228 P.3d 245, 249 (Colo. App. 2009). Hearsay is "a statement other than one made by the declarant while testifying

at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). A statement made by a party is not hearsay if it is offered against that party. CRE 801(d)(2)(A). And statements offered for other purposes — such as showing the statement's effect on the listener or to give context to a defendant's statements — are not offered for their truth and are not hearsay. *See Glover*, ¶¶ 40-42; *People v. Robinson*, 226 P.3d 1145, 1151 (Colo. App. 2009).

#### b. The Extraction Reports Are Not Hearsay

¶ 53 Abad contends that the district court erred by admitting testimony about the extraction reports, because the reports themselves were hearsay. We disagree.

¶ 54 A declarant is "a person who makes a statement." CRE 801(b). A "statement" is either "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him to be communicative." CRE 801(a). Information automatically generated by machines is not hearsay because no "person" or "declarant" made a "statement" within the meaning of CRE 801. *Buckner*, 228 P.3d at 250.

24

¶ 55    Losey's testimony established that the extraction reports were produced automatically without human intervention. She testified that to generate the extraction reports, "you plug the cell phone . . . into a computer and *it* extracts the data and then . . . *[i]t* creates a report of everything that's on the phone." (Emphasis added.) The reports do not require any human input short of plugging the phone into a machine.

¶ 56    Because the reports were automatically generated, the reports themselves are not "statements" made by a "declarant," and therefore they are not hearsay. *See id.*[5] We perceive no abuse of discretion.

---

[5] Abad again relies on *Hamilton*, in which the division concluded that cell phone extraction reports and a detective's testimony about those reports were hearsay. *Hamilton*, ¶¶ 26, 30. The *Hamilton* division started with the common premise that machine-generated reports are not hearsay because "no 'person' or 'declarant' made a communicative 'statement' within the meaning of CRE 801." *Id.* at ¶ 24. It then explained that "[a] computer-generated record constitutes hearsay, however, when its creation involves human input or interpretation." *Id.* at ¶ 26. The division concluded that the extraction reports there were hearsay because the prosecution did not establish that the reports were generated without human input or interpretation. *Id.* at ¶ 21. Unlike *Hamilton*, we conclude that there was sufficient evidence for the district court to conclude that the extraction reports in this case were computer generated without human input or interpretation.

### c. Testimony About the Extraction Reports Is Not Hearsay

¶ 57    Abad contends that the district court erred by admitting testimony about the extraction reports because that testimony constituted hearsay within hearsay. We disagree.

¶ 58    As an initial matter, because we have concluded that the extraction reports themselves are not hearsay, it follows that live testimony about the reports is not hearsay. *See* CRE 801(c) ("'Hearsay' is a statement *other than one made by the declarant while testifying at the trial or hearing*, offered in evidence to prove the truth of the matter asserted.") (emphasis added).

¶ 59    Still, when a statement contains multiple layers of hearsay, a trial court must analyze each layer separately to determine whether a recognized exception applies. *Bernache v. Brown*, 2020 COA 106, ¶ 14. Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule. *See* CRE 805. So, even though we have concluded that the extraction reports were not hearsay, the reports may still contain inadmissible evidence and we must analyze the statements within the reports separately to determine if they are hearsay. *See Bernache,* ¶ 17.

26

¶ 60    Abad does not specifically identify the language in the extraction reports to which the witnesses testified that he contends is hearsay.  He does, however, argue that certain categories of information contained in the extraction reports are hearsay.  We address each category as best we can.

¶ 61    To the extent Abad contends that the names of the files extracted from the S-III and S-IV were hearsay, we disagree.  They were offered for the nonhearsay purpose of showing that Abad knew sexually exploitative content was on his phones.

¶ 62    To the extent Abad contends that testimony about the number of images on the S-III and S-IV was hearsay, we disagree.  A computer-generated tally is not hearsay because there is no declarant and there is no statement within the meaning of CRE 801.  *See Buckner*, 228 P.3d at 250.  And the witnesses' personal perceptions of the volume and type of images in the extraction reports are not hearsay.

¶ 63    To the extent Abad contends that testimony about the YouTube search "[IM] a pedophile" was hearsay, we also disagree.  First, the information was admitted without objection as part of People's Exhibit 1, the partial S-IV extraction report.  Second, it was

not offered for its truth; regardless of the truth or falsity of the statement, it was offered to show that the phone user knowingly searched for that phrase. Third, the statement constituted a nonhearsay statement by a party opponent. CRE 801(d)(2)(A). "To admit a statement under this rule, the proponent must prove by a preponderance of the evidence that it was the opposing party who made the statement." *Glover*, ¶ 40. This standard asks the court to decide whether a contested fact is "more probable than its nonexistence." *People v. Marx*, 2019 COA 138, ¶ 49 (quoting *People v. Taylor*, 618 P.2d 1127, 1135 (Colo. 1980)). We conclude the evidence was sufficient to establish, by a preponderance of the evidence, that Abad was the person who conducted the search.

¶ 64 To the extent Abad contends that the device user information contained in People's Exhibit 1, the partial S-IV extraction report, was hearsay, we disagree. If such information could be considered a statement, it would be a nonhearsay statement by a party opponent because we conclude the evidence was sufficient to establish by a preponderance of the evidence that Abad input his name, email, and account information into the phone. *See* CRE 801(d)(2)(A); *Glover*, ¶ 13.

¶ 65    Finally, to the extent Abad contends that testimony about KIK app messages was hearsay, we disagree.  Roemer testified, without objection, to the username associated with the various S-IV messaging apps, which was reflected in People's Exhibit 1, the partial S-IV extraction report.  For any statements made by the usernames associated with Abad (e.g., Chocothunde), the statements would be admissions by a party opponent, and not hearsay.  *See* CRE 801(d)(2)(A).  We conclude the evidence was sufficient to establish this fact by a preponderance of the evidence.  *See Glover*, ¶ 13.  Any statements by other unknown individuals engaging in a chat conversation with Abad were not offered for their truth, but for the nonhearsay purpose of providing context for Abad's own statements.  *See Glover*, ¶ 42 ("As to statements made by others in the records, they were not hearsay because they were admitted to give context to defendant's statements."); *Robinson*, 226 P.3d at 1151.

¶ 66    Accordingly, because the extraction reports were not hearsay, and because none of the challenged evidence contained in the extraction reports was hearsay, the district court did not abuse its

discretion by admitting witness testimony about the reports or their content.

### d. No Confrontation Clause Violation

¶ 67     Abad contends that the admission of hearsay evidence violated his rights under the Federal and Colorado Confrontation Clauses. We disagree.

¶ 68     Although the admission of testimonial hearsay implicates a defendant's confrontation rights under the Federal and Colorado Constitutions, the admission of nonhearsay does not.  *Robinson,* 226 P.3d at 1151; *see also* U.S. Const. amend. VI; *Davis v. Washington,* 547 U.S. 813, 823 (2006) (admission of testimonial hearsay violates federal confrontation rights); *People v. Oliver,* 745 P.2d 222, 226 (Colo. 1987) ("The sixth amendment right of confrontation guaranteed by the United States Constitution is applicable to the states through the fourteenth amendment."); *People v. Isom,* 140 P.3d 100, 103 (Colo. App. 2005) (no right of confrontation exists when statements are not offered for their truth).  Because the district court did not admit hearsay evidence, the Confrontation Clause does not apply.

### III. Multiplicity

¶ 69    Finally, Abad contends that his nine convictions are multiplicitous in violation of double jeopardy. We agree.

### A. Additional Factual Background

¶ 70    The prosecution charged Abad with nine counts of sexual exploitation of a child. Each count alleged that he possessed or controlled either a video or more than twenty different items of sexually exploitative material, "[o]n and before October 27, 2015," the day that the police executed the search warrant at Abad's home.

¶ 71    Before trial, Abad moved to dismiss counts 2-9 as multiplicitous. The prosecution responded by providing a bill of particulars explaining that it charged six separate counts for six separate videos — one video found on the S-III and five videos found on the S-IV — and three separate counts for three groups of more than twenty images — one group found in Dropbox, one group found on the S-III, and one group found on the S-IV. It contended that possession of each sexually exploitative video constituted a separate crime and that possession of more than twenty sexually exploitative images on each electronic device or storage site (Dropbox, S-III, and S-IV) constituted a separate crime. The district

court denied the motion to dismiss, indicating it was not persuaded that the prosecution was not permitted to charge the case as it had.

¶ 72 Jury Instruction 3, which identified the charges, simply stated, "The defendant is charged with committing the crimes of SEXUAL EXPLOITATION OF A CHILD (NINE COUNTS), in Jefferson County, Colorado, on or before October 27, 2015."

¶ 73 The jury received verdict forms for each count. The verdict forms did not reference any dates associated with the individual counts. The only information that distinguished one count from another was (1) whether the count related to the S-III or the S-IV and (2) whether the count related to a video or to a group of images. The jury convicted Abad of nine counts as follows:

- Count 1: Sexual exploitation of a child (Samsung S-IV Video – EX. 1-27). The jury found this item was a moving image.

- Count 2: Sexual exploitation of a child (Samsung S-IV Video – EX. 1-26). The jury found this item was a moving image.

- Count 3: Sexual exploitation of a child (Samsung S-IV Video – EX. 1-25). The jury found this item was a moving image.

- Count 4: Sexual exploitation of a child (Samsung S-IV Video – EX. 1-24). The jury found this item was a moving image.

- Count 5: Sexual exploitation of a child (Samsung S-IV Video – EX. 1-23). The jury found this item was a moving image.

- Count 6: Sexual exploitation of a child (Samsung S-IV Images – EX. 1, 1-1 to 1-22). The jury unanimously found Abad "knowingly possessed the same 21 or more items of sexually exploitative material, or that he knowingly possessed all of the items alleged and at least 21 items were sexually exploitative."

- Count 7: Sexual exploitation of a child (Samsung S-III Video – EX. 2-30). The jury found this item was a moving image.

- Count 8: Sexual exploitation of a child (Samsung S-III Images – EX. 2, 2-1 to 2-26, 2-28, and 2-29). The jury

unanimously found Abad "knowingly possessed the same 21 or more items of sexually exploitative material, or that he knowingly possessed all of the items alleged and at least 21 items were sexually exploitative."

- Count 9: Sexual exploitation of a child (Dropbox Images – EX. 3-1 to 3-23, 3-25). The jury did not unanimously find that Abad "knowingly possessed the same 21 or more items of sexually exploitative material." Accordingly, he was convicted of a class 6 felony rather than a class 4 felony on this count.

### B.    Standard of Review and Applicable Law

¶ 74    We review de novo a preserved claim that multiplicitous convictions violate a defendant's constitutional protection against double jeopardy. *People v. Bott,* 2019 COA 100, ¶ 57 (*Bott I*), *aff'd,* 2020 CO 86.

¶ 75    The Double Jeopardy Clauses of the United States and Colorado Constitutions protect an accused against being twice placed in jeopardy for the same crime. U.S. Const. amend. V; Colo. Const. art. II, § 18; *Bott II,* ¶ 7; *Woellhaf v. People,* 105 P.3d 209, 214 (Colo. 2005). The Double Jeopardy Clauses protect not only

against a second trial for the same offense, but also against multiple punishments for the same offense. *Bott II*, ¶ 7.

¶ 76 Multiplicity is the charging of multiple counts and the imposition of multiple punishments for the same criminal conduct. *Woellhaf*, 105 P.3d at 214; *Quintano v. People*, 105 P.3d 585, 589 (Colo. 2005) ("Multiplicity is the charging of the same offense in several counts, culminating in multiple punishments."). Multiplicitous convictions violate the constitutional prohibition against double jeopardy. *Bott I*, ¶ 58.

¶ 77 If a defendant is prosecuted for distinct offenses under the same statute, we ascertain whether his double jeopardy rights were violated by determining (1) whether the unit of prosecution prescribed by the legislature permits the charging of multiple offenses and (2) whether the evidence in support of each offense justified the charging of multiple offenses and the imposition of multiple sentences. *Id.* (citing *Quintano*, 105 P.3d at 590).

¶ 78 "Unit of prosecution" refers to the extent to which the relevant statute permits the prosecution to separate the defendant's conduct into discrete acts for purposes of prosecuting multiple offenses. *Bott II*, ¶ 9; *Quintano*, 105 P.3d at 590. "It is the province of the

legislature to establish and define offenses by prescribing the allowable unit of prosecution." *Woellhaf*, 105 P.3d at 215; *see also Bott II*, ¶ 8 ("Because any particular criminal proscription can be violated more than once and often in more than one way, it is . . . for the legislature to determine the breadth of the conduct it intends to be punished as a single crime or single violation of its criminal proscription.").

¶ 79 To determine the unit of prosecution, we look exclusively to the statute. *Woellhaf*, 105 P.3d at 215; *People v. Arzabala*, 2012 COA 99, ¶ 23. In construing a statute, we must discern and effectuate the intent of the legislature based primarily on the plain and ordinary meaning of the statutory language. *Bott I*, ¶ 61; *Arzabala*, ¶ 23.

### C.    The Unit of Prosecution

¶ 80 To determine the unit of prosecution for sexual exploitation of a child, we look to the text of the statute. *Woellhaf*, 105 P.3d at 215; *Arzabala*, ¶ 23. As relevant here, a person commits sexual exploitation of a child if he "[p]ossesses or controls any sexually exploitative material for any purpose." § 18-6-403(3)(b.5). Sexually exploitative material is statutorily defined to include "any" of a

number of specifically named and disjoined items depicting a child involved in or observing explicit sexual conduct.  § 18-6-403(2)(j); *Bott II*, ¶ 13.  "Sexual exploitation of a child by possession of sexually exploitative material . . . is a class 4 felony if . . . [t]he possession is of a video, recording or broadcast of moving visual images, or motion picture or more than twenty different items qualifying as sexually exploitative material."  § 18-6-403(5)(b)(II).

¶ 81    The Colorado Supreme Court recently considered the unit of prosecution for sexual exploitation of a child by possession.  *See Bott II*, ¶¶ 13-16.  It focused on subsection (5)(b), concerning classification and punishment, which "expressly defines the scope of a single commission of that offense in terms of the type or number of different *items* qualifying as sexually exploitative material possessed pursuant to subsection (3)(b.5)."  *Id.* at ¶ 15.

> In subparagraph (5)(b)(II), the legislature specifies that possession pursuant to subsection (3)(b.5) of a video, recording or broadcast of moving visual images, or motion picture, or more than twenty different items qualifying as sexually exploitative material "*is a class 4 felony.*"  [§ 18-6-403(5)(b)(II)] (emphasis added). . . .
>
> . . . [I]n specifying that possession of more than twenty qualifying items *is* a class 4

felony, the legislature has defined the unit of prosecution in terms of the number of items possessed for the crime of sexual exploitation of a child by possession pursuant to subsection (3)(b.5). Because the legislature has itself determined that the possession of qualifying items numbering greater than twenty, without limitation, amounts to the commission of a single felony, separate convictions and punishment for the simultaneous possession of qualifying items exceeding twenty violates constitutional protections against being punished twice for the same offense.

*Id.* at ¶¶ 15-16.

¶ 82     Under the plain and unambiguous language of the statute, Abad may be convicted and punished only once for the simultaneous possession of more than twenty items qualifying as sexually exploitative material. § 18-6-403(5)(b)(II); *Bott II*, ¶ 16. In other words, that Abad possessed more than one set or grouping of twenty-one sexually exploitative images does not, by itself, mean that he committed more than one offense.

¶ 83     By the same rationale, Abad may be convicted and punished only once for the simultaneous possession of more than one video. Subparagraph (5)(b)(II) provides that possession of "a video . . . or more than twenty different *items* qualifying as sexually exploitative

38

material" *is* a class 4 felony. § 18-6-403(5)(b)(II) (emphasis added). Although "items" is not a defined term, "subparagraph (5)(b)(II)'s use of the phrase 'items qualifying as sexually exploitative material' is a clear and unmistakable reference to the list of disjoined items in subsection (2)(j)." *Bott II*, ¶ 15. One of those disjoined items is "any . . . video . . . that depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct." § 18-6-403(2)(j). Because such a video is an "item[] qualifying as sexually exploitative material" under subsection (2)(j), the legislature chose to punish possession of "a video" the same as possession of more than twenty videos (or more than twenty other items qualifying as sexually exploitative material).

¶ 84     Our task in construing this statute is to ascertain and give effect to the intent of the legislature, not to second-guess its judgment. *Rowe v. People*, 856 P.2d 486, 489 (Colo. 1993). This is particularly true here as it is the exclusive province of the legislature "to establish and define offenses by prescribing the allowable unit of prosecution." *Woellhaf*, 105 P.3d at 215. Based on the plain language of the statute, the legislature did not intend to create a separate offense or authorize a separate conviction and

punishment for possession of each sexually exploitative video; rather, possession of a single video or simultaneous possession of multiple videos, absent evidence that the videos were possessed in factually distinct ways as we discuss next, constitutes a single class 4 felony offense.

### D.    Abad's Convictions Must Merge

¶ 85    Having determined that the legislature defined the unit of prosecution for the crime of sexual exploitation of a child by possession pursuant to subsection (3)(b.5) in terms of the number and type of sexually exploitative items possessed, *see Bott II*, ¶ 16, we must next determine whether the evidence adduced at trial established that Abad engaged in factually distinct acts of possession that may be prosecuted separately.  *See Woellhaf*, 105 P.3d at 218-19; *Quintano*, 105 P.3d at 591-92.  If the counts cannot be prosecuted separately, they must merge.  *See People v. Rhea*, 2014 COA 60, ¶ 17 ("Merger has the same effect as vacating one of the multiplicitous sentences.").

¶ 86    Typically, the factors we consider when determining whether conduct supporting the commission of a particular offense is factually distinct from conduct supporting a second or subsequent

commission of the same offense include whether the acts were separated by time or location, were the product of new volitional departures or fresh impulse, or were separated by intervening events. *See Woellhaf,* 105 P.3d at 218-19; *Quintano,* 105 P.3d at 591-92; *see also Bott II,* ¶ 14. But "possession" as a criminal act "is clearly different in nature from other discrete, voluntary acts." *Bott II,* ¶ 14. Possession "continues until the possessor is divested of control of the possessed item, [so] it is more in the nature of a condition than a discrete act, or at least has more in common with a course of conduct or a series of acts related along a continuum of conduct." *Id.* As a result, factors like temporal and spatial proximity or the presence or absence of intervening events or volitional departures are less applicable to offenses of possession. *Id.*

> Rather, the intended scope of a single offense of possession is typically determined by considerations involving the nature of the thing or quantity of things simultaneously possessed, how or where or when they were acquired or controlled, the length of time they have been possessed, or the purpose or intended use for which they were possessed.

*Id.*

¶ 87    The People contend that Abad was properly convicted of six separate offenses based on possession of six videos and three separate offenses based on possession of groups of more than twenty images found on three separate electronic devices or storage sites — the S-III, the S-IV, and Dropbox.  We have already concluded that, absent some evidence that Abad's possession of each video or group of more than twenty images was factually distinct, his simultaneous possession of the six videos and more than sixty images constitutes a single offense of sexual exploitation of a child by possession.  *See* § 18-6-403(3)(b.5); *see also Bott II*, ¶ 16

¶ 88    Although the People argue that each of the videos is "factually distinct," they focus on the unit of prosecution rather than on any distinct conduct by Abad that would support additional or subsequent commissions of the same offense.  It was their position at trial, and it remains their position on appeal, that each video possessed constitutes a separate and distinct offense.  But because of how the legislature has defined the unit of prosecution, the mere fact that Abad simultaneously possessed more than one video cannot, by itself, justify more than one conviction and punishment.

And the People do not identify any facts adduced at trial to establish "how or where or when," *Bott II*, ¶ 14, Abad had acquired or controlled any one of the videos. Nor do they point us to evidence that Abad possessed any one of the videos for a different length of time or for a different purpose than any of the others. *See id.*

¶ 89 For the three counts based on possessing more than twenty images, the People argue that the three separate electronic devices or storage sites (two phones and a Dropbox account) equate to three separate "locations." *See Quintano*, 105 P.3d at 592. Because the sexually exploitative material was found in three different locations, the People argue, Abad engaged in three distinct acts of possession that may be prosecuted separately.[6]

¶ 90 While location is a relevant factor in determining whether distinct offenses have been committed, the "location" contemplated

---

[6] To be sure, the supreme court's recent decision in *People v. Bott*, 2020 CO 86, left open the question we must answer now. The sexually exploitative items on which Bott's conviction and punishment were based were all found on a single memory card. *Id.* at ¶ 19. The court did not decide whether images saved on multiple electronic devices or storage sites could establish factually distinct possession offenses. *Id.*

by *Woellhaf* and *Quintano* is a physical location.  *See Woellhaf*, 105 P.3d at 218-19; *Quintano,* 105 P.3d at 591-92.  Indeed, changing physical locations may allow a defendant an opportunity to pause and reflect on his actions, after which further criminal conduct more clearly constitutes a new volitional departure subject to additional punishment.  *See Woellhaf,* 105 P.3d at 218-19; *Quintano,* 105 P.3d at 591-92.

¶ 91    But as noted in *Bott II,* ¶ 14, the typical factors we consider when determining whether conduct is sufficiently factually distinct to support multiple commissions of the same offense do not readily apply to crimes of possession.  And we are not convinced that two phones and a Dropbox account, standing alone, evidence Abad's possession of sexually exploitative material in factually distinct ways — particularly when the two phones were recovered from one physical location (Abad's bedroom), the Dropbox account is cloud-based, there was evidence that some images found in Dropbox were the same images found on the S-IV, and there was no evidence that the images found on the S-III were entirely different than the images found on the S-IV.

¶ 92     The People did not argue at trial and have not identified on appeal any other facts establishing distinct acts of possession by Abad. Without prejudging the significance of such evidence, the People do not contend that Abad acquired or controlled any of the images or groups of images on a different date or at a different time or from a different source than any of the other images or groups of images. And they do not point us to evidence that Abad possessed any of the images or groups of images for a different length of time or for a different purpose than any of the others. *Bott II*, ¶ 14. Without more, we cannot conclude on this record that the evidence justified the charging of multiple offenses and the imposition of multiple sentences. *See id.*; *Friend v. People*, 2018 CO 90, ¶ 23 (concluding the prosecution proved only a single crime in part because "the information did not allege specific facts supporting" five different counts and "although before us the People have attempted to assign specific facts to particular counts, the prosecution did not try the case that way"); *People v. Abiodun*, 111 P.3d 462, 471 (Colo. 2005) (noting that when determining whether a defendant's acts constitute factually distinct offenses, we look to how the offenses were charged and to the evidence at trial); *People*

*v. Meils*, 2019 COA 180, ¶ 44 (merging four counts of sexual exploitation of a child where there was "no indication that the prosecution intended to demonstrate that count 1 occurred at a different time than counts 2, 3, and 4").

¶ 93　　We also agree with Abad that it would be illogical to conclude that possession of twenty-one images on each of three different storage devices found in the same physical location may be prosecuted as three separate class 4 felony offenses while possession of sixty-three images (or 294 images, as in *Bott II*, ¶ 4) on a single device must be prosecuted as a single class 4 felony offense. *See United States v. Elliott*, 937 F.3d 1310, 1315 (10th Cir. 2019) ("It seems implausible that Congress could have intended to punish an individual who possesses five images of child pornography on five different devices five times more severely as an individual who possesses the same five images on one device.").

¶ 94　　Because the evidence adduced at trial does not establish factually distinct acts of possession, we conclude that Abad's convictions must merge and the case must be remanded for resentencing, if necessary. *See Bott I*, ¶ 69 (vacating multiplicitous convictions and remanding for resentencing); *People v. Johnson,*

2016 COA 15, ¶ 25 ("In multicount cases, judges typically craft sentences on the various counts as part of an overall sentencing scheme, but when a count is vacated and that scheme unravels, they should have the discretion to reevaluate the underlying facts and sentences on the remaining counts.").

### IV. Conclusion

¶ 95 We remand to the district court to merge Abad's convictions on counts 2-9 into his conviction on count 1, to amend the mittimus to reflect the merger, and for resentencing, if necessary.[7] We otherwise affirm the judgment.

JUDGE DUNN and JUDGE FREYRE concur.

---

[7] Where the original sentences for counts that are merged were concurrent with the remaining count, there may be no need for resentencing since the length of the initial sentence remains the same after merger. *See, e.g., Armintrout v. People*, 864 P.2d 576, 578, 582 (Colo. 1993).