23CA0092 Peo v Casias 02-26-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0092
Jefferson County District Court No. 21CR757
Honorable Diego G. Hunt, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Nathan Allan Casias,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Johnson and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 26, 2026

---

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Claire Pakis, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Nathan Allan Casias, appeals his conviction of two counts of unlawful sexual contact and the restitution order. We affirm.

## I.     Background

¶ 2     Casias' cousin, N.P., and his stepsister, R.E., accused him of engaging in unwanted sexual contact with each of them on separate occasions. N.P. reported one incident that occurred in September 2018 when she and Casias were roommates sharing an apartment. According to N.P., while she and Casias were watching TV after a party, he got into bed behind her, repeatedly put his hands in her pants despite her repeated requests to stop, and pulled her pants and underwear down. N.P. again told him to stop and left the room.

¶ 3     She also alleged that he did something similar a few years earlier, in 2014, when she stayed the night at his apartment. She claimed that in the middle of the night, Casias crawled into the bed she was sleeping in, pulled down her pants, and pushed his erect penis against her bottom.

¶ 4     R.E. also described a specific incident that occurred in 2018. She claimed that she went to a party at Casias' apartment in April 2018, got drunk, and fell asleep. She alleged that when she woke

up, she was in Casias' bed with Casias lying next to her, rubbing the inside of her thighs, rubbing her breasts, and kissing her neck with his erect penis against her butt and lower back.

¶ 5    R.E. also alleged that starting in 2011, when she was eleven years old, Casias gave her massages during which she would lay face down and he would lay face down on top of her.  She said that the massages made her feel uncomfortable.

¶ 6    Casias was charged with two counts of unlawful sexual contact: one for the 2018 incident with N.P. and the other for the 2018 incident with R.E.  He was also charged with attempted sexual assault for the 2014 incident with N.P. and sexual assault on a child (pattern of abuse) for the "massages" he gave R.E. between 2011 and 2015.

¶ 7    The jury found him guilty of both unlawful sexual contact counts for the 2018 incidents.  It found him not guilty of the remaining counts.  He was convicted and sentenced accordingly and ordered to pay restitution.

¶ 8    Casias appeals.  He first argues that the trial court erred by (1) admitting evidence that was discovered during the middle of trial and (2) denying his request for a continuance based on the

2

discovery and introduction of that evidence. He also challenges the restitution order, arguing that the prosecution's failure to comply with its obligations under the restitution statute deprived the trial court of authority to award restitution. We conclude that none of his arguments warrant relief.

## II.  The Late-Discovered Evidence

¶ 9      Casias argues that evidence discovered during the middle of trial and ultimately admitted was inadmissible hearsay, lacked proper authentication, and entitled him to a continuance.

¶ 10      The evidence at issue involved text messages N.P. sent to R.E. that partially corroborated the September 2018 incident involving N.P.  At trial, N.P. testified to the details of that incident as described above.  She also testified that the incident occurred around 3 a.m. and that she texted with R.E. immediately thereafter. However, the timestamps on the texts in the exhibit the prosecution first introduced indicated that N.P.'s post-incident texts to R.E. were sent just after 2 a.m., not after 3 a.m.  Defense counsel cross-examined N.P. about this discrepancy at trial, and N.P. admitted that she could have been mistaken about the exact time of the incident.

¶ 11     After she finished testifying, N.P. approached the prosecution with an explanation for this discrepancy.  The 2018 incident occurred in Colorado, but she provided the prosecution with the text messages when she was in California, which is one hour behind Colorado.  N.P. suspected this time difference had shifted the timestamps on the messages to an hour earlier.

¶ 12     At trial the next day, the prosecution sought to address this discrepancy.  N.P. still had the text messages on her phone.  So the prosecution introduced screenshots of the text messages that N.P. had just taken in Colorado.  The timestamps in the new screenshots showed that the post-incident texts were sent shortly after 3 a.m., as N.P. had originally testified.

¶ 13     Casias challenged the admission of the newly taken screenshots on hearsay and authentication grounds, and he also requested a continuance so that he could determine how to combat this new evidence.  The trial court provided defense counsel a recess to review the phone but ultimately admitted the evidence over Casias' objections and denied the request for a continuance.  Casias challenges both the admission of the evidence and the denial of a continuance.

## A. Admission of the New Screenshots

¶ 14    We review the admission of the newly taken screenshots for an abuse of discretion. *See People v. Abad*, 2021 COA 6, ¶ 8. If the trial court abused its discretion, we apply the harmless error test and will reverse only if the error substantially influenced the verdict and affected the fairness of the trial. *Hagos v. People*, 2012 CO 63, ¶ 12. We conclude that any error does not require reversal.

¶ 15    Hearsay is any statement other than one made by the declarant while testifying in court that is offered to prove the truth of the matter asserted. CRE 801(c). Hearsay is generally inadmissible unless it falls within an exception to the hearsay prohibition. CRE 802.

¶ 16    Information automatically generated by a machine is not hearsay because there is no declarant and no statement within the meaning of the hearsay rules. *Abad*, ¶ 54. However, such information may become hearsay if its creation involves human input. *People v. Hamilton*, 2019 COA 101, ¶ 26.

¶ 17    The question here is whether the timestamps in the new screenshots were purely and automatically machine generated or were created with human input. In some situations, timestamps

that appear on text message *are* created with human input. By bringing a phone into a different time zone, a person can alter the timestamps. And many phones allow users to change the time zone setting manually regardless of what time zone the phone is actually in, thereby altering the timestamps.

¶ 18 Accordingly, it may be true that the new timestamps here qualified as hearsay. We need not definitively resolve that question, however, because even if they were hearsay, any error in admitting them was harmless.

¶ 19 The new timestamps resolved a mere one-hour discrepancy between N.P.'s description of the incident and her text messages. This was not a situation in which the surrounding circumstances indicated that the incident could have occurred only at a particular time and could not have possibly occurred an hour earlier. The text messages aside, it was just as plausible that the incident occurred at 2 a.m. as at 3 a.m. Therefore, the only thing the jury might have taken away from the discrepancy before the new timestamps were introduced was that N.P. might have misremembered the exact hour of the incident, a fact that would not have been surprising given that the incident occurred four years before she testified at

trial. Accordingly, we conclude that the discrepancy between the original timestamps and N.P.'s initial testimony would have inflicted minimal damage to N.P.'s credibility and done little to support Casias' defense of fabrication. Therefore, any error in admitting the new screenshots to explain that discrepancy was harmless — it did not substantially influence the verdict or affect the fairness of the trial.

¶ 20     This conclusion that any hearsay error in admitting the new screenshots was harmless applies equally to Casias' authentication argument. Even if the new screenshots were not properly authenticated, their erroneous admission was harmless for the same reasons.

## B.    Continuance

¶ 21     We review the denial of a continuance for an abuse of discretion. *People v. Cook*, 2014 COA 33, ¶ 60. In doing so, we consider the totality of the circumstances and will find an abuse discretion only if Casias demonstrates actual prejudice arising from the court's denial of the continuance. *See People v. Brown*, 2014 CO 25, ¶ 19 (explaining that a trial court's denial of a continuance is "error only if [it] was arbitrary or unreasonable *and materially*

*prejudiced the defendant*" (emphasis added) (quoting *United States v. Simpson*, 152 F.3d 1241, 1251 (10th Cir. 1998))); *People v. Sauser*, 2020 COA 174, ¶¶ 11-12.

¶ 22    Casias argues that the court's denial of a continuance prejudiced him because the new timestamps undercut his credibility attack on N.P. and his defense theory that she fabricated the allegations. This argument is inapposite — it is an argument about the prejudice from *admitting the new screenshots*, not an argument about prejudice from *denying the continuance*.

¶ 23    The closest Casias comes in his opening brief to articulating any kind of prejudice from the denial of a continuance is his assertion that a continuance was necessary "to investigate the text messages" and their associated timestamps. Casias does not explain or even suggest what any investigation beyond that conducted during the recess might have revealed. In other words, he does not explain what evidence or arguments the lack of a continuance prevented him from putting before the jury. Although he cites cases involving the late discovery of exculpatory evidence, he does not explain how further investigation might have revealed exculpatory evidence here. Such a conclusory assertion of

prejudice is far from the demonstration of actual prejudice required to establish an abuse of discretion. *See Brown*, ¶ 19. We therefore reject Casias' argument that the court abused its discretion.

### III. Restitution

¶ 24 Casias also argues that the prosecution's failure to comply with its obligations under the restitution statute deprived the trial court of authority to award restitution. We interpret the statute de novo, *People v. Weeks*, 2021 CO 75, ¶ 24, and disagree.

¶ 25 Section 18-1.3-603(2)(a), C.R.S. 2022,[1] required the prosecution to present information supporting the amount of requested restitution "to the court prior to the order of conviction or within ninety-one days, if it is not available prior to the order of conviction." Although not explicit in the statute, divisions of this court have held that the prosecution must "use reasonable diligence" to obtain and present this information at or before sentencing. *People v. Brassill*, 2024 COA 19, ¶ 30 (*cert. granted* Aug. 4, 2025). That said, the prosecution's failure to use reasonable diligence to do this does not, in and of itself, deprive a

---

[1] We apply the version of the restitution statute in effect at the time of sentencing.

trial court of authority to award restitution if the court and the prosecution otherwise comply with the restitution statute. *Id.* at ¶ 58.

¶ 26     Here, the trial court ordered restitution at sentencing. Twenty-nine days later, the prosecution submitted information in support of the amount of restitution. And sixty-seven days after sentencing, the trial court awarded the requested amount.

¶ 27     Casias does not argue that the trial court violated any of its deadlines or obligations under the restitution statute. He argues only that the prosecution failed to use reasonable diligence to request an amount of restitution at or before sentencing. He further argues that this failure deprived the court of authority to award restitution, even though both the prosecution and the trial court met all their other statutory deadlines and otherwise complied with the restitution statute. Even if we agreed that the prosecution failed to use reasonable diligence as Casias alleges, the trial court nevertheless had authority to award restitution. *See id.* We therefore reject Casias' challenge to the restitution award.

IV.     Disposition

¶ 28     The judgment of conviction and restitution order are affirmed.

JUDGE JOHNSON and JUDGE GOMEZ concur.