The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Theodore Alex TRUJILLO, Defendant–Appellant.

No. 98CA2575.

Colorado Court of Appeals, Div. I.

Dec. 21, 2000.

As Modified on Denial of Rehearing May 24, 2001.

Certiorari Granted Sept. 10, 2001.

Ken Salazar, Attorney General, Laurie A. Booras, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Suzan Trinh Almony, Broomfield, CO, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Theodore Alex Trujillo, appeals the judgment of conviction entered on a jury verdict finding him guilty of violating bail bond conditions. He also appeals the order adjudicating him as an habitual criminal. We reverse the judgment of conviction, vacate the habitual criminal adjudication, and remand the cause for a new trial.

Following a preliminary hearing, the court in Jefferson county continued defendant's bond to his next appearance date, February 3, 1997. When defendant failed to appear in court as scheduled, his bail bond was forfeited and a warrant was issued for his arrest.

Defendant was later arrested in Denver on an unrelated offense. In the proceedings on that offense, the Denver police sergeant who interviewed defendant shortly after his arrest testified that defendant told him he understood he was wanted on a warrant and, on the night of his arrest, was "en route fleeing to California." Because those statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), they were suppressed by the Denver trial court, and that decision was not appealed.

Defendant did not testify at his trial in Jefferson County on the bail bond violation. However, his mother and his wife both testified that he had always been in special education classes, had taken Ritalin for some time, and was forgetful and incapable of remembering his obligations. The attorney who represented defendant at the preliminary hearing also testified that she could not recall whether defendant had received a "setting slip" indicating that the date of his next appearance was February 3, 1997.

In rebuttal, over defense counsel's strenuous objection, the prosecutor presented the testimony of the Denver police sergeant. Based in part on that testimony, defendant was convicted of violating his bail bond conditions, adjudicated as an habitual criminal, and sentenced to six years in the Department of Corrections.

■ Defendant contends his conviction must be reversed because the trial court erred in allowing testimony concerning his previously suppressed statement to be used to rebut the testimony of defense witnesses. We agree.

This is an issue of first impression in this jurisdiction. However, in *James v. Illinois*, 493 U.S. 307, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990), the Supreme Court held that, while the impeachment exception to the exclusionary rule permits the prosecution to introduce illegally obtained evidence to impeach a defendant's testimony, that exception does not permit the prosecution to use illegally obtained evidence to impeach the testimony of other defense witnesses.

In *James v. Illinois*, the defendant's inculpatory statements—that his hairstyle on the day of a shooting matched witnesses' descriptions of the shooter's hair—were suppressed because they were obtained in violation of the Fourth Amendment. The defendant did not testify; however, a defense witness testified that the defendant's hairstyle on the day of the shooting did not match the description of the hairstyle of the shooter. Over the defendant's objection, the state then introduced the defendant's statements for the purpose of impeaching the witness' testimony, and the defendant was convicted.

In reversing that conviction, the Supreme Court stated:

> Expanding the class of impeachable witnesses from the defendant alone to all defense witnesses would create different incentives affecting the behavior of both defendants and law enforcement officers. As a result, this expansion would not promote the truth-seeking function to the same extent as did creation of the original exception, and yet it would significantly undermine the deterrent effect of the general exclusionary rule. Hence, we believe that this proposed expansion would frustrate rather than further the purposes underlying the exclusionary rule.

*James v. Illinois, supra,* 493 U.S. at 313–314, 110 S.Ct. at 652, 107 L.Ed.2d at 684.

The Supreme Court further reasoned that the threat of criminal prosecution for perjury would be sufficient to deter defense witnesses from intentionally lying on the defendant's behalf, and concluded that the impeachment exception should not be expanded because defendants, fearing the impeachment of their witnesses with illegally obtained evidence, would be more hesitant to call witnesses who would otherwise offer probative evidence.

Here, the prosecution used defendant's suppressed statements to rebut the testimony of defense witnesses. Under the reasoning and rule of *James v. Illinois, supra,* that rebuttal should not have been allowed.

■ We do not agree with the People that, because the defendant's statements in *James v. Illinois, supra,* were suppressed on Fourth Amendment grounds, that decision does not necessarily apply here, where defendant's statements were suppressed on Fifth Amendment grounds. The People rely on *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), in which the Supreme Court held that *Miranda* violations, being "procedural," did not mandate application of the "fruit of the poisonous tree" analysis set forth in *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). However, in *Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), the Supreme Court in refusing to overrule *Miranda,* held that the *Miranda* procedures were constitutionally based and were not merely an unconstitutional evidentiary or procedural rule. *Oregon v. Elstad, supra,* did not require a different result. The *Dickerson* court noted that *Oregon v. Elstad, supra,* "simply recognizes the fact that unreasonable searches under the Fourth amendment are different from unwarned interrogation under the Fifth Amendment." *Dickerson v. United States,* 530 U.S. at 441, 120 S.Ct. at 2335, 147 L.Ed.2d at 418. Consequently, we are unpersuaded by the People's argument that *Oregon v. Elstad, supra,* applies here, and we conclude that the "fruit of the poisonous tree" analysis employed in *James v. Illinois, supra,* applies to this violation of defendant's Fifth Amendment rights.

Defendant's other contentions of error are either moot or unlikely to arise on retrial.

Because defendant's conviction must be reversed, his adjudication as an habitual criminal based on that conviction must be vacated as well.

The judgment of conviction is reversed, the habitual criminal adjudication is vacated, and the cause is remanded for a new trial.

PLANK and ROTHENBERG, JJ., concur.