The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Terry SCEARCE, Defendant–Appellant.

No. 01CA1660.

Colorado Court of Appeals,
Div. I.

Dec. 4, 2003.

Rehearing Denied Jan. 15, 2004.

Ken Salazar, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Terry Scearce, appeals the judgment of conviction, habitual offender sentence, and order of restitution, entered following a jury verdict finding him guilty of conspiracy to commit aggravated robbery. We reverse the judgment of conviction, vacate the habitual criminal adjudication and restitution order, and remand the case for a new trial.

Defendant was charged in this case with attempted second degree murder, first degree assault, aggravated robbery, conspiracy to commit first degree assault and aggravated robbery, and two crimes of violence, all arising from acts undertaken by him and two others to obtain a laptop computer from the victim.

A woman, a mutual friend of defendant and the victim, asked defendant to go to the victim's motel room to help her retrieve the computer, whose ownership was in dispute. The woman arrived at the motel room alone, and, after being told by the victim that he had sold the computer, she started to leave the room. According to the victim, defendant and another man were standing at the door when the woman opened it to leave; according to the woman and defendant, the two men knocked on the door just as she was about to leave. She informed the two men that the victim had sold her computer and then left the room.

Defendant asked the victim why he had sold the computer and the other man demanded that the victim give them the proceeds from the sale. The victim then told defendant the computer was in a dresser drawer, when in fact, only a phone book was inside the computer case in the drawer.

According to the victim, he heard the sound of switchblade knives "clicking" open, and, after catching a glimpse of the knives, hit one of the men in the head with a soda can. In the ensuing melee, the victim was stabbed seven times in the front and back. The victim claimed to have been stabbed by both men.

Defendant took the computer case, complete with phone book, from the room.

The police arrested defendant twenty days later. From his car, they recovered three knives, two of which were switchblades, but none of them tested positive for traces of blood.

At trial, defendant denied that he went to the motel intending to rob or hurt the victim. Instead, he said, he went because he thought he could reason with the victim, and he entered the fray only after the victim attacked his companion and, even then, only to separate the two men. He denied having a knife at any time during the incident and related that he realized that a knife had been present and someone had been stabbed only after returning to his car, where his companion showed him his bloody knife.

The jury found defendant guilty of conspiracy to commit aggravated robbery and acquitted him of all other charges. Subsequently, the trial court found that he had twice been previously convicted of a felony and sentenced him, as an habitual offender, to twenty-four years imprisonment.

## I.

Defendant contends that the evidence is insufficient to sustain his conviction, because: (1) under *People v. Gallegos*, 130 Colo. 232, 235, 274 P.2d 608, 609 (1954), *overruled by People v. Moseley*, 193 Colo. 256, 566 P.2d 331 (1977), taking property by force from another under a claim of right is

not robbery; (2) the woman claimed to own the computer; and thus (3) any agreement defendant had with her to retrieve the computer could not qualify as a conspiracy to commit robbery, much less aggravated robbery. We disagree.

Because defendant did not raise this contention either before the trial court or in his opening brief, but only during oral argument, we need not consider it. *See Bd. of County Comm'rs v. City of Greenwood Village,* 30 P.3d 846, 849 (Colo.App.2001)(court will not consider arguments raised for the first time in reply brief or during oral argument); *see also People v. Hall,* 59 P.3d 298, 301 (Colo.App.2002)(arguments raised for the first time in reply brief need not be considered on appeal).

Ordinarily we would not countenance the injection of an additional issue at this late stage of the appeal. However, because of its obvious significance and the great likelihood that it would arise, in one form or another, in future proceedings, we elect to address it now.

The premise upon which this argument rests is no longer sound. In *Gallegos, supra,* the court held, based on "generally accepted doctrine," that "where property is taken under a bona fide claim of right the requisite animus furandi [element of robbery] is lacking." Animus furandi, the court explained, is the "intent to steal, that is, a criminal intent or an intent to feloniously deprive an owner of his property." *People v. Gallegos, supra,* 130 Colo. at 234–35, 274 P.2d at 609.

In *People v. Moseley, supra,* the supreme court disavowed the continuing viability of *Gallegos* in light of revisions to the robbery statute, which are still in effect. *See* § 18–4–301(1), C.R.S.2003. These revisions, the court said, contain "no suggestion that robbery requires any specific intent to permanently deprive the owner of the use or benefit of the thing taken." *People v. Moseley, supra,* 193 Colo. at 262, 566 P.2d at 335.

Indeed, unlike theft, which involves the taking of "anything of value of another," § 18–4–401(1), C.R.S.2003, robbery involves the taking of "anything of value from the person or presence of another." Section 18–4–301(1). The difference in statutory text supports the supreme court's observations that the current robbery statutes "are primarily intended to protect persons and not property," and that "[p]roof of ownership of the property taken is immaterial [to robbery] so long as the victim had sufficient control over it at the time of the taking." *People v. Borghesi,* 66 P.3d 93, 101 (Colo.2003).

Thus, we conclude that, contrary to defendant's contention, the robbery statutes endorse the basic public policy that "even rightful owners should not be permitted to ... use force to regain their property, once it has been taken." *State v. Miller,* 622 N.W.2d 782, 786 (Iowa Ct.App.2000); *see also Whitescarver v. State,* 962 P.2d 192, 195 (Alaska Ct.App.1998)(rejecting claim of right defense to robbery); *State v. McMillen,* 83 Hawai'i 264, 266–67, 925 P.2d 1088, 1090–91 (1996)(recognizing trend rejecting claim of right defense); *cf. People v. Rosenberg,* 194 Colo. 423, 427, 572 P.2d 1211, 1213 (1978)(rejecting claim that efforts to collect a legally enforceable debt fall outside the scope of the criminal extortion statute: "If the appellants honestly believed that they were entitled to payment ... they should have availed themselves of appropriate civil remedies.").

Defendant is thus not entitled to relief on this ground.

## II.

■ Defendant contends that his conviction must be vacated because the verdict upon which it is based is inconsistent with that acquitting him of aggravated robbery. We disagree.

"A person may not be convicted of conspiracy to commit an offense if he is acquitted of the offense which is the object of the conspiracy where the sole evidence of conspiracy is the evidence establishing the commission of the offense which is the object of the conspiracy." Section 18–2–206(2), C.R.S.2003.

■ Section 18–2–206(2) codifies the supreme court's ruling in *Robles v. People,* 160 Colo. 297, 301, 417 P.2d 232, 234 (1966). *See People v. Frye,* 898 P.2d 559, 567 n. 12 (Colo.1995). The inconsistent verdict rule is:

premised on the existence of only one fund of evidence which is utilized to prove both the substantive offense and conspiracy charge. On this basis, if a jury disbelieves this evidence or has a reasonable doubt that it is sufficient to prove the substantive offense, it logically follows that it is likewise unbelievable or insufficient to support a verdict of guilty to the conspiracy charge.

Thus, the basic reason for the ... rule disappears when the evidence can be segmented or is different as to both offenses....

*Armijo v. People*, 170 Colo. 411, 413–14, 462 P.2d 500, 501 (1969); *see Hughes v. People*, 175 Colo. 351, 354, 487 P.2d 810, 812 (1971)("[T]he jury cannot be permitted to believe the testimony for the purposes of the conspiracy and disbelieve it for purposes of the substantive crime. This does not mean, however, that ... where there was different evidence relating to the conspiracy and the substantive crime that the jury may not return different verdicts as to the two charges."); *People v. Harrison*, 746 P.2d 66, 67 (Colo.App.1987)("contrary verdicts on the substantive offense and the related conspiracy charge are not inconsistent if there is evidence in the record which implicates the defendant in the conspiracy and which is separate and independent from that of participation in the substantive offense").

■ Thus, if independent evidence in the record implicates the defendant in the conspiracy, separate and distinct from that supporting the substantive crime, the jury may properly acquit on the substantive charge, yet convict on the conspiracy. Further, as an appellate court, our duty is to reconcile and uphold verdicts if the evidence so permits. If the verdicts are consistent in any view of the evidence, the presumption is that the jury took that view. *People v. Hood*, 878 P.2d 89, 92 (Colo.App.1994).

■ In determining whether a separate and distinct fund of evidence exists, apart from that concerning the substantive crime, we may consider any evidence other than that concerning the commission of the substantive crime itself. *See People v. Forbes*, 185 Colo. 410, 413, 524 P.2d 1377, 1379 (1974)(evidence of conspiracy "separate and independent of the actual removal of the automobile parts"); *People v. Walker*, 182 Colo. 317, 320, 512 P.2d 1243, 1244 (1973)("evidence of events leading up to the attempt to actually perpetrate the rape ... was separate and independent from that of the actual assault and will support the jury verdict of conspiracy"); *Hughes v. People*, *supra*, 175 Colo. at 355, 487 P.2d at 812 ("evidence of conspiracy separate and independent of the mere participation in the actual taking of the goods from the store").

■ To establish a conspiracy, there need only be circumstantial evidence indicating that the conspirators, by their acts, pursued the same objective, with a view toward attainment of that same objective. *People v. Robinson*, 874 P.2d 453, 463 (Colo.App.1993).

In the present case, a fund of evidence, separate and independent of that concerning the aggravated robbery itself, exists implicating defendant in a conspiracy: (1) defendant and the woman had discussed the victim and the computer over dinner; (2) the woman called defendant on his cell phone shortly before she went to the motel and asked him to meet her at the victim's motel room; (3) both the woman and defendant parked some distance away from the motel; (4) defendant and his companion were standing outside the victim's motel room when the woman was leaving; (5) defendant immediately addressed the victim about the missing computer; (6) one or both of the two intruders brandished a knife inside the room; and (7) three knives, two of which were similar to the ones brandished in the victim's room, were subsequently recovered from defendant's car.

Viewing this evidence in the light most favorable to the prosecution, a rational fact finder could reasonably conclude, beyond a reasonable doubt, that defendant conspired with one or more other persons to commit the crime of aggravated robbery. *See* § 18-2-201, C.R.S.2003 (elements of conspiracy); § 18-4-302(1)(b), C.R.S.2003 (elements of aggravated robbery, as charged).

■ Further, the verdicts acquitting defendant of aggravated robbery and convicting

him of conspiracy to commit the same are reconcilable because either (1) the jury may have believed defendant's testimony to the extent that he denied using actual force against the victim to obtain the computer case; or (2) not having been instructed on complicity principles, the jury may have acquitted him of aggravated robbery because it did not know he could be held accountable for the acts of his companion. *See* § 18–1–603, C.R.S.2003; *People v. Saldana,* 899 P.2d 208, 210–11 (Colo.1995)(considering effect of instructions and reasonable interpretations of evidence); *People v. Albers,* 196 Colo. 66, 67–68, 582 P.2d 667, 668 (1978)(considering reasonable interpretations of evidence).

Because there is an independent fund of adequate evidence upon which the jury could find defendant guilty of conspiracy, and because the jury verdicts are otherwise reconcilable, we conclude that defendant's conspiracy conviction is not barred by § 18–2–206(2) or by any lack of evidence.

### III.

■ Defendant contends that the trial court impermissibly infringed upon his constitutional right to present a defense by prohibiting him from eliciting certain evidence. We agree.

■ Few rights are more fundamental than the right of the accused to put before the jury evidence that might influence the determination of guilt. *People v. Richards,* 795 P.2d 1343, 1345 (Colo.App.1989). However, the right to present a defense is not absolute. *People v. Watkins,* 83 P.3d 1182 (Colo.App.2003). Ordinarily, it requires only that the accused be permitted to introduce all relevant and admissible evidence. *People v. Harris,* 43 P.3d 221, 227 (Colo. 2002). Thus, the right to present a defense does not guarantee a defendant a right to question witnesses in violation of the rules of evidence or to produce inadmissible hearsay. *See Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988)("The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

We agree with the prosecution that, in a number of instances, the trial court properly applied standard evidentiary rules to prohibit leading questions and nonresponsive answers. *See* CRE 611(c); *Denbow v. Williams,* 672 P.2d 1011, 1014 (Colo.1983).

However, we agree with defendant that the court erred in prohibiting him, on hearsay grounds, from eliciting evidence of what he and the woman said to one another about the subject of the alleged conspiracy. Defendant argued, to no avail, that he was entitled to present evidence of whether there was any type or even suggestion of agreement between himself and the woman to use force, threats, or intimidation against the victim.

■ Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c); *People v. Huckleberry,* 768 P.2d 1235, 1241 (Colo.1989). An out-of-court statement not offered for its truth is, if relevant, admissible as nonhearsay evidence. *See People v. J.M.,* 22 P.3d 545, 547 (Colo. App.2000).

■ "A verbal act is an utterance of an operative fact that gives rise to legal consequences. Verbal acts ... are not hearsay, because the statement is admitted merely to show that it was actually made, not to prove the truth of what was asserted in it." *Pronesti v. State,* 847 So.2d 1165, 1166 (Fla.Dist. Ct.App.2003); *see* 2 John W. Strong et al., *McCormick on Evidence* § 249, at 100–01 (5th ed.1999)(examples include "oral utterances by the parties in a contract suit constituting the offer and acceptance which brought the contract into being" and utterances of words "relied on as constituting a slander or deceit").

■ Performative utterances, committing the parties to a course of action to which legal consequences attach, qualify as nonhearsay verbal acts. *See United States v. Montana,* 199 F.3d 947, 950 (7th Cir.1999)(discussing performative utterances); *cf. State v. Connally,* 79 Hawai'i 123, 125, 899 P.2d 406, 408 (Ct.App.1995) (defendant's statement that she would perform sex acts for money was "verbal act," or

"operative fact," demonstrating that she made the requisite offer proscribed by the prostitution statute).

■ As pertinent here,

A conspiracy is an agreement or understanding, express or implied, between the conspirators. The usual way in which people reach agreements or understandings is by the use of words, oral or written. Indeed, it is difficult to conceive of a conspiracy formed or carried forward without the use of any words.

*United States v. Calaway,* 524 F.2d 609, 613 (9th Cir.1975). Nonhearsay verbal act evidence is admissible on the issue of whether a conspiratorial agreement existed. *See United States v. Lim,* 984 F.2d 331, 336 (9th Cir.1993); *Arguelles v. State,* 842 So.2d 939, 942 (Fla.Dist.Ct.App.2003)("out-of-court statements . . . offered to prove the making or terms of a conspiratorial agreement . . . are 'verbal acts' not excluded under the hearsay rule").

Here, defendant was prohibited from eliciting testimony about statements he and the woman made, not for the truth of the matters contained in the statements, but for the very fact that they were made, to dispute the prosecution's claim that there was an agreement to use force, threats, or intimidation with a deadly weapon against the victim. As such, the evidence was admissible, and the trial court erred in excluding it. *Cf. People v. McGrath,* 793 P.2d 664, 666–67 (Colo.App. 1989)(in murder-robbery case, trial court erred in excluding victim's out-of-court statements concerning alleged plan to fake a robbery with defendant; statements qualified for admission under state of mind exception to rule against hearsay).

■ Because it affected defendant's fundamental right to present exculpatory evidence, the error here is of constitutional dimension and reversal is required unless we are persuaded beyond a reasonable doubt that it did not contribute to defendant's conviction. *See People v. Harris, supra,* 43 P.3d at 230.

In making this assessment, we ask "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *People v. Welsh,* 58 P.3d 1065, 1072 (Colo.App. 2002)(*cert. granted* Nov. 18, 2002).

■ If a reasonable possibility exists that the error contributed to the verdict, then the error is not harmless. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *People v. Jurado,* 30 P.3d 769, 772 (Colo.App.2001)(erroneous jury instruction).

We note that, although prohibited by the court from relating the gist of defendant's statements, the woman was permitted to at least deny having any kind of agreement with defendant to intimidate, threaten, harass, or harm the victim. That fact, however, is not dispositive. Defendant was entitled to present the facts underlying the woman's conclusion. He was also entitled to present them through his own testimony.

■ While there are obvious reasons why the trier of fact might question the credibility of a defendant's testimony, the trier of fact might nonetheless deem that testimony compelling and conclusive because of its special evidentiary nature. *See People v. Curtis,* 681 P.2d 504, 513–14 (Colo.1984)(discussing a defendant's right to testify on his or her own behalf).

Here, defendant was denied the opportunity to present exculpatory evidence having a direct bearing on the central issue in his conspiracy case, namely, the existence and scope of any agreement with an alleged co-conspirator. Although we earlier concluded that there was sufficient evidence independent of the aggravated robbery itself to sustain a conviction for conspiracy, that evidence is by no means overwhelming in nature. Under the circumstances, we cannot say with fair assurance that, beyond a reasonable doubt, the exclusion of this evidence could not have affected the jury's determination. Thus, defendant's conviction must be reversed. *See People v. McGrath, supra,* 793 P.2d at 666–67.

Because we reverse defendant's conviction, we also vacate the habitual offender adjudi-

cation and order of restitution imposed in connection therewith. *See People v. Trujillo,* 30 P.3d 760, 762 (Colo.App.2000), *aff'd,* 49 P.3d 316 (Colo.2002).

## IV.

For purposes of providing guidance, we address those of defendant's remaining contentions that are likely to recur on retrial.

 We reject defendant's assertion that he is entitled to inquire into the lenient plea bargain his own witness entered into with the state in order to bolster the witness's credibility with the jury. Because many factors besides the extent of an individual's culpability enter into a prosecutor's decision to plea bargain a case, the trial court has discretion under CRE 403 to bar defendant's requested inquiry. The court also has discretion to permit the inquiry if the prosecution somehow opens the door to it. *See generally People v. Murphy,* 919 P.2d 191, 195 (Colo. 1996).

Further, should defendant be convicted of the conspiracy charge upon retrial, he is not entitled to have a jury make the requisite habitual offender determinations. *See People v. Carrasco,* 85 P.3d 580 (Colo.App.2003); *People v. Johnson,* 74 P.3d 349, 356 (Colo. App.2002). Nor would the trial court be barred from adjudicating him an habitual offender because (1) the prosecution's motion to amend the information with habitual criminal counts, though timely filed, had not been formally granted prior to receipt of habitual offender evidence during this trial, *see People v. Daniels,* 973 P.2d 641, 645–46 (Colo.App. 1998); or (2) there was a discrepancy between the allegation and the proof in this trial with respect to the precise date of one of his prior convictions. *See People v. Copeland,* 976 P.2d 334, 341 (Colo.App.1998), *aff'd,* 2 P.3d 1283 (Colo.2000); *People v. Young,* 923 P.2d 145, 149 (Colo.App.1995).

Finally, if defendant is convicted of conspiracy upon retrial, absent a voluntary, knowing, and intelligent waiver, he is entitled to the assistance of counsel at any hearing held to determine his restitution responsibilities. *See Mempa v. Rhay,* 389 U.S. 128, 135, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967)(constitutional right to assistance of counsel applies to sentencing hearing); *People v. Johnson,* 780 P.2d 504, 508 (Colo.1989)(restitution is part of sentence); *People v. Arguello,* 772 P.2d 87, 92–93 (Colo.1989)(constitutional right to counsel is subject to voluntary, knowing, and intelligent waiver).

The judgment of conviction is reversed, the habitual offender sentence and restitution order are vacated, and the case is remanded for a new trial in accordance with the views expressed in this opinion.

Chief Judge DAVIDSON and Judge LOEB concur.