22CA1401 Peo v Xia 11-20-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 22CA1401
El Paso County District Court No. 20CR6926
Honorable Erin Sokol, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Xinan Xia,

Defendant-Appellant.

_____

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE KUHN
J. Jones and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

_____

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrew C. Heher, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Xinan Xia, appeals his convictions for pimping, two counts of keeping a place of prostitution, and pandering.  We affirm.

## I.     Background

¶ 2     Xia owned the Rose Spa, where he employed two women, J.F. and J.X., his girlfriend.  The Colorado Springs Police Department received an anonymous tip that employees at the spa were performing sex acts for payment.  The police investigation discovered an entry for the Rose Spa on a website that lists and reviews spas and massage parlors that offer sexual services.

¶ 3     The police then conducted a sting operation using a male undercover officer who posed as a massage customer.  The officer arranged for a thirty-minute massage with an employee; paid $35; and received a back, buttocks, and leg massage.  The employee then asked the officer to turn over, and after he did so, he inquired if she did "extras," implying a sexual service.  The employee indicated that she did.

¶ 4     The officer then made a masturbatory motion and asked how much the "extras" would cost.  The employee held up five fingers.  The officer confirmed that she meant $50, to which she agreed.  The officer reconfirmed the price and then used a bust word to signal

his team via the wire he was wearing. The police entered the spa and detained J.F. and J.X.

¶ 5 The police then searched the spa and Xia's apartment across the street. Using a blacklight, they found stains on the walls of the massage rooms and on several towels. Later testing confirmed that the stains were semen. The police also found bank statements showing that Xia had been paying for an advertising account on the sexual services website for over a year. And they found a sticky note with a password for an account on the website and evidence that Xia had repeatedly accessed the site on his phone. Bank records also showed that many customers would pay twice, typically separated by thirty minutes, during a single visit. The second payment was often fifty percent or more than the initial payment. The police did not find any standard intake forms, client health information, or signed consent and liability waivers.

¶ 6 The police spoke with J.X. and J.F., and both denied any involvement in prostitution and that any sexual activity had occurred at the spa. Xia was charged with pimping in violation of section 18-7-206, C.R.S. 2025, two counts of keeping a place of prostitution in violation of section 18-7-204, C.R.S. 2025, and one

count of pandering in violation of section 18-7-203(1)(b), C.R.S. 2025.  J.X. and J.F. were identified as victims.  After a trial, the jury convicted Xia on all counts, and the court sentenced him to six years of probation.

## II.    Analysis

¶ 7    Xia contends that the trial court erred by (1) permitting J.X., a nonparty, to make a blanket assertion of her Fifth Amendment right; (2) refusing to instruct the jury that it could draw inferences from J.X.'s assertion of her Fifth Amendment right; and (3) prohibiting the introduction of statements made by J.X. and J.F. We address each contention in turn.

### A.    The Blanket Assertion of Fifth Amendment Privilege

¶ 8    Xia contends that the trial court violated his right to present a defense by ruling that J.X. could make a blanket assertion of her Fifth Amendment right to remain silent.  We disagree.

#### 1.    Additional Background

¶ 9    At trial, the prosecution sought to call J.X to testify; however, prosecutors were unwilling to grant her immunity.  On the morning before the second day of trial, the court held a conference, and the parties offered proposed questions so that the court could

3

determine whether they would implicate J.X.'s Fifth Amendment rights. Counsel and the court engaged in the following exchange:

> [XIA'S COUNSEL]: . . . I would certainly anticipate in asking her everything about the operation. If she says the same thing she told the police long ago, it would be in a way good for me because she told the police there w[ere] no sexual things going on there. But, you know, she's going to be asked very specifically about every single thing, the records, ledgers, receipts, what's going on, what's not going on. So frankly, I hope that she's going to say there's no sex going on.
>
> Obviously, I don't know -- I don't have the access to be able to speak to her recently. I'm sure [J.X.'s counsel] would not be very happy if I try to go talk to her right now and find out what her current story is.
>
> THE COURT: So your cross-examination would be about sex happening, all the ledgers. You're trying to hold her responsible for whatever may have happened if there was anything untoward?
>
> [XIA'S COUNSEL]: Exactly.
>
> THE COURT: In other words, she would be implicated in the pimping charge that's being brought against Mr. Xia at this time.
>
> [XIA'S COUNSEL]: Potentially. I'm hoping she's going to say there was no pimping, . . . or no sex going on. But -- I mean she's going to be asked about that very specific subject. I guess time will tell what her answer will be if we get to that.

4

THE COURT: So it's your position that she could get on the stand.  You could ask her benign questions.  [Xia's counsel] could cross-examine her, and then she could plead the Fifth.

[THE PROSECUTOR]: Yes.

THE COURT: Okay.  All right.  [J.X.'s counsel], have you heard enough?

[J.X.'S COUNSEL]: Yes there's no such thing as a benign question in a criminal case.

THE COURT: Exactly.  So every one of the questions that's asked of her given the opening and the theories that I've heard through the jury selection process as well as the motions that I heard so far -- I mean, she could be, in my opinion, charged with all of the things that Mr. Xia [was] charged with as well as conspiracy and other types of claims.  I mean, that seems incredibly evident to me today.

Do you disagree?  I'm assuming that's why the People are not offering immunity.

[THE PROSECUTOR]: She's been consistent.  We have not heard anything different from her, otherwise we would have discovered it to the [d]efense.  She's been consistent with the account she gave the police, which is that she was there working.  I mean, . . . for all we know, she's a victim.  And that's what we believe is that she's a victim in this case.  We can't prove that part because she never said she was coerced or anything like that into this.

But I think that the fact that . . . she was being walked back and forth every day, and he was

the only one with a car, the bank account --
and by "he" I mean Mr. Xia for the record.  I
think that points to culpability for him.  He
was in charge.  He was the business owner.
He has the [sexual services website app] on his
phone.  He had the pictures for escorts on his
phone.  We don't have anything like that
against her.

THE COURT: I understand that's your theory
of the [p]rosecution.  But the [d]efense has
already articulated that they will try to pin
everything on her to the extent that they're
able to do that if the jury were to believe that
something untoward had been happening or
illegal had been happening at the Rose Day
Spa.  So by asking those questions, aren't you
implicating her Fifth Amendment right?

[THE PROSECUTOR]: Well, I think . . . that's a
question for the Court.  My opinion is that we
are not. . . .

[J.X.'S COUNSEL]: Judge, I think any little
piece of evidence or any answer from the
witness stand could compromise her Fifth
Amendment right in terms of a complicitor
theory, or conspiracy.  Conspiracy is little
more difficult because I have to prove the
agreement by the complicitor.  It sounds like
she's familiar with the receipts of the business,
so it could easily spill over.  I don't think they
get to have it both ways.  If they want the
testimony, then they have to give immunity.  If
there's no immunity, I'm likely to advise her
not to testify.  It's her decision, not mine, so I'll
give her the advisement.

6

¶ 10    The court then ruled that, under *People v. Dikeman*, 555 P.2d 519, 520 (Colo. 1976), *overruled by*, *Rios-Vargas v. People*, 2023 CO 35, ¶ 3, if J.X. exercised her Fifth Amendment right to remain silent, then she could not be called testify.[1]  Subsequently, J.X.'s counsel advised her of her Fifth Amendment rights.  That afternoon her counsel informed the court that J.X. wanted to exercise her right to remain silent and not testify.  Based on that assertion, the court confirmed that neither the prosecutor nor the defense was going to call J.X. as a witness.  J.X. did not testify at trial.

### 2.    Preservation

¶ 11    The People contest whether Xia preserved this issue and, in doing so, argue that Xia's attorney failed to (1) object to J.X.'s Fifth Amendment invocation; (2) object to the court's ruling that this invocation covers all of her testimony; and (3) include a precise

---

[1] In footnote 2 in his opening brief, Xia addresses the supreme court's opinion overruling *People v. Dikeman*, 555 P.2d 519 (Colo. 1976).  Xia asserts that he "is moving for a remand for the purpose pursuing a Crim. P. 35(c)(1) motion to vacate the conviction given this substantial change in the law that directly underscores the violation of Mr. Xia's constitutional rights, the prejudice to Mr. Xia and the eradication of a fair trial."  But an application for a limited remand must be sought in this court by motion, C.A.R. 27(a)(1), and no such motion was ever received.  Accordingly, we take no action on footnote 2.

statement of preservation in the opening brief. In reply, Xia argues — without a citation to the record — that his "[o]pening [b]rief explicitly and in detail recounts the circumstances of the errors and how and why they are preserved." Our review of the record reveals that, while the parties discussed J.X.'s possible testimony and her invocation of her Fifth Amendment rights, Xia's counsel made no objections to her invocation of the Fifth Amendment. Further, Xia's counsel did not object to the trial court's ruling that her testimony would be subject to the Fifth Amendment privilege or that a blanket prohibition on her testifying was necessary. To the contrary, when the court asked defense counsel, "And you're not asking to call her as well?" counsel responded that *Dikeman* "also covers the [d]efense."

¶ 12 "To preserve an issue for appellate review, a party must make a timely objection on the record, and that objection must be 'specific enough to draw the trial court's attention to the asserted error.'" *Forgette v. People*, 2023 CO 4, ¶ 21 (citation omitted) (quoting *People v. Tallent*, 2021 CO 68, ¶ 12). "[M]erely calling an issue or fact to the court's attention, without asking for any relief, is insufficient to preserve an issue for review." *Id.* at ¶ 23. Xia's

counsel didn't object or ask for any relief regarding this issue, instead agreeing with the court's reading of the case supporting its ruling. Thus, this issue is unpreserved. *See id.* at ¶ 21.

### 3. Standard of Review and Applicable Law

¶ 13 We review de novo a claim that the government violated the defendant's constitutional right to present a defense. *Rios-Vargas,* ¶ 19. And we review all errors, "constitutional and nonconstitutional, that were not preserved by objection for plain error." *Hagos v. People,* 2012 CO 63, ¶ 14. An error is plain if it is "obvious and substantial." *Id.* For an error to be obvious, it "must [have] contravene[d] (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law" at the time of trial. *Scott v. People,* 2017 CO 16, ¶ 16 (quoting *People v. Pollard,* 2013 COA 31M, ¶ 40); *see People v. Crabtree,* 2024 CO 40M, ¶ 72. We reverse under plain error only if the error "so undermined the fundamental fairness of the proceeding as to cast serious doubt on the reliability of the judgment." *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo. 2003); *see Hagos,* ¶ 14.

¶ 14 "The Fifth Amendment to the U.S. Constitution provides protections against compulsory self-incrimination . . . ." *Deleon v.*

9

*People*, 2019 CO 85, ¶ 17.  This privilege applies to nondefendant witnesses "who are not required to answer questions 'where the answers might incriminate [them] in future criminal proceedings.'" *Rios-Vargas*, ¶ 24 (quoting *People v. Ruch*, 2016 CO 35, ¶ 20).

¶ 15    "On the other hand, '[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense.'"  *People v. Smith*, 275 P.3d 715, 720 (Colo. App. 2011) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)).  But "[t]he right to present a defense is not absolute, . . . and it 'does not include the right to compel a witness to waive his or her Fifth Amendment privilege.'"  *Id.* (quoting *People v. Coit*, 50 P.3d 936, 938 (Colo. App. 2002)).

### 4.    The Trial Court Did Not Plainly Err

¶ 16    Xia argues that the trial court erred by prohibiting J.X. from testifying about matters that would not be subject to her Fifth Amendment privilege, such as exculpatory statements that no prostitution, pimping, or sexual services occurred at the Rose Spa. In doing so, he relies on the supreme court's observation in *People v. Austin* that "[i]t is well settled that the privilege against self-incrimination may not be asserted in advance of the questions

10

actually propounded," 412 P.2d 425, 427 (Colo. 1966), and argues that "[t]he court erred when it permitted and relied upon [J.X.'s] blanket assertion of her [Fifth] Amendment right without ever having her take the stand and posing relevant questions to her."

¶ 17    Xia correctly sets forth this "basic proposition" espoused in *Austin* and repeated often by the Colorado Supreme Court. *See Ruch*, ¶ 23; *Rios-Vargas*, ¶ 25. But his reliance on this principle standing alone disregards other relevant principles, such as the inherent concerns about undue prejudice resulting from a party highlighting a witness's invocation of the Fifth Amendment. *See People v. Banks*, 2012 COA 157, ¶ 20 ("One policy behind the prohibition against asking a witness about invoking the privilege is to prevent the jury from drawing a negative inference about the witness's character or credibility."), *aff'd in part, rev'd in part sub nom.*, *People v. Tate*, 2015 CO 42, ¶ 20. And he doesn't explain why the trial court should have relied on *Austin* rather than *Dikeman*, a more recent case. After all, the court in *Dikeman* noted that "[f]or many years, it has been the rule of law in Colorado that the prosecution may not call a witness to testify before the jury if it knows that the witness will claim his privilege against self-

incrimination." 555 P.2d at 520. And the court extended that principle, holding that "the defense may not ask a defense witness questions which it knows the witness will refuse to answer because of a valid claim to a privilege not to testify." *Id.*

¶ 18 It's true that during the pendency of this appeal, the supreme court decided *Rios-Vargas*, which held that a defendant is entitled to question a nonparty alternate suspect who intends to invoke the Fifth Amendment privilege and that such a witness cannot assert a blanket privilege under the Fifth Amendment. *Rios-Vargas*, ¶ 44. In so holding, the court overruled *Dikeman*'s longstanding bar to a defense counsel asking a defense witness questions counsel knew the witness would refuse because of the Fifth Amendment privilege. *Id.* at ¶¶ 44-49. But as Xia admits, J.X. was not an alternate suspect. And in any case, the court was not asked to make a finding that there was a nonspeculative connection or nexus between J.X. and the crime charged, a required prerequisite to admit alternate suspect evidence. *See People v. Elmarr*, 2015 CO 53, ¶ 23.

¶ 19 Regardless, the supreme court affirmed its prohibition on the prosecution calling a witness who intends to invoke the Fifth

Amendment. *See Rios-Vargas*, ¶ 44. And that is the scenario that occurred here. At trial, the prosecutor sought to call J.X. to the stand, and the court prohibited her from testifying after it determined that the parties' anticipated questions would implicate her Fifth Amendment rights. In doing so, the trial court did not err. *See id.* ("[W]e affirm that the prosecution may not call a witness who intends to invoke the Fifth Amendment.").

¶ 20    To the extent that Xia argues that the court's ruling implicated his right to call J.X. as a witness in his defense, his attorney explicitly declined to call J.X. as a witness at trial. He cannot now claim that the court prohibited him from questioning a witness that he never sought to call. *See People v. Geisick*, 2016 COA 113, ¶ 16 ("When a party specifically removes issues from a trial court's consideration, the party has waived those issues and we may not review them on appeal.").

¶ 21    Even if the trial court's blanket prohibition against J.X. testifying would be in error under *Rios-Vargas* today, any such error was not plain when the trial court made it. As Xia acknowledges, relief under the plain error rule is only available "if the error is plain at the time it is made." *Crabtree*, ¶ 72. But that is not the case

13

here. At the time of trial, *Dikeman* was controlling precedent, and the trial court was obligated to follow it. *See Scott*, ¶ 17. *Dikeman* prohibited a defendant from "call[ing] a witness, when it is known that the witness will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege." *Dikeman*, 555 P.2d at 521. The trial court's ruling didn't contravene a clear statutory command, a well-settled legal principle, or Colorado case at the time it was made. Therefore, the error was not obvious. *See Scott*, ¶ 16.

¶ 22 Thus, the trial court did not plainly err by prohibiting the prosecution or Xia, to the extent it even did so, from calling J.X.

### B. The Request for a Jury Instruction

¶ 23 Xia next contends that the trial court erred by failing to give a judicial notice jury instruction that J.X. had asserted her Fifth Amendment privilege and was refusing to testify. We again disagree.

#### 1. Standard of Review

¶ 24 We review de novo "whether the [jury] instructions accurately informed the jury of the governing law." *People v. DeGreat*, 2018 CO 83, ¶ 15. However, we review a trial court's decision to give a

particular jury instruction for an abuse of discretion. *People v. Manyik*, 2016 COA 42, ¶ 65. The court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair, or if it misconstrues or misapplies the law." *People v. Quillen*, 2023 COA 22M, ¶ 14.

### 2. The Trial Court Did Not Abuse Its Discretion by Denying Xia's Proposed Jury Instruction

¶ 25 On the third day of Xia's jury trial, his attorney requested that the court instruct the jury that J.X. "took the Fifth, and is refusing to testify." The trial court gave counsel a day to find legal support for his request, and the next day, he renewed his request, relying on *Chambers v. Mississippi*, 410 U.S. 284 (1973).

¶ 26 Xia argues that we should look to the civil context for guidance on whether the court should provide a jury instruction about a nonparty witness's invocation of the Fifth Amendment privilege. *See McGillis Inv. Co., LLP v. First Interstate Fin. Utah LLC*, 2015 COA 116, ¶ 36. But it is well-settled law that we treat jury instructions about a witness's invocation of the Fifth Amendment differently in civil and criminal cases. As a division of this court has summarized,

15

> It is reversible error *in a criminal case* to instruct a jury that it may draw an inference of guilt from a defendant's failure to testify about facts relevant to his case. . . . However, "the Fifth Amendment does not forbid adverse inferences against parties to *civil actions* when they refuse to testify in response to probative evidence offered against them."

*Asplin v. Mueller*, 687 P.2d 1329, 1331 (Colo. App. 1984) (citation omitted) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). While it's true that *Asplin* and *Baxter* contemplate the testimony of a party witness, *McGillis* draws its nonparty witness rule directly from *Asplin*'s party witness rule without in any way questioning the well-settled differences between civil and criminal cases. *See McGillis*, ¶ 27.

¶ 27 Additionally, because Xia's counsel did not call — or seek to call — J.X. to testify, she was not a nonparty witness, or indeed a witness at all. Without having seen her testify, the jury had no exposure to J.X. The only information they would receive about her would have been the instruction that she had invoked her Fifth Amendment privilege. Instructing the jury in this manner would constitute a credibility attack on a potential witness who has not even testified. *See Banks*, ¶ 20 ("One policy behind the prohibition

16

against asking a witness about invoking the privilege is to prevent the jury from drawing a negative inference about the witness's character or credibility.").  And a defendant cannot introduce evidence for the sole purpose of impeaching the credibility of a person who is not a witness for the prosecution.  *See Hall v. People*, 35 P. 44, 44 (Colo. 1893).  Xia's request was an attempt to accomplish the same impermissible purpose.

¶ 28     Thus, the trial court's refusal to instruct the jury about J.X.'s invocation of her Fifth Amendment rights was not manifestly arbitrary, unreasonable, unfair, or a misapplication of the law.  As a result, it was not an abuse of discretion.  *See Quillen*, ¶ 14.

### C.     The Recorded Statements

¶ 29     Lastly, Xia argues that the trial court violated his right to due process and to present a defense when it prohibited the introduction of J.X.'s and J.F.'s recorded statements to the jury.  In doing so, he also argues that the court should have allowed the

17

introduction of the recorded statements because, while hearsay, they bore indicia of reliability and trustworthiness.[2] We disagree.

### 1. Preservation

¶ 30    The People agree that Xia preserved the issue insofar as his counsel sought to introduce the statements at trial. However, the People assert that he presents his argument — that the statements were admissible given their indicia of reliability or trustworthiness — for the first time on appeal. We agree with the People. Xia's attorney made the substance of his constitutional argument to the trial court, so that argument is preserved. But his hearsay exception argument is not.

¶ 31    During trial, the court and the parties engaged in the following colloquy:

> [XIA'S COUNSEL]: . . . In lieu of [the defense's proposed Fifth Amendment instruction], I guess I would ask to allow [J.X.'s] complete, unredacted statement -- which, of course, would be hearsay. I understand. But I would argue it's exculpatory. And, frankly, what she's saying is there was no sex, no pimping or prostitution, or anything of that nature. It also

---

[2] Xia's briefing doesn't invoke CRE 807, the residual exception to the hearsay rule that allows for the introduction of evidence that has "circumstantial guarantees of trustworthiness." Regardless, this is the evidentiary exception on which his argument relies.

> helps put into light and clarify some of the
> evidence yesterday about her possibly being a
> victim. And basically I think her statement
> would show she's not a victim. So I am
> requesting that.
>
> The same thing with as far as the other
> witness, [J.F.]

¶ 32 Our review of the record reveals that Xia's counsel did not raise his reliability argument or invoke CRE 807 — either in name or in substance — in the trial court. While acknowledging that the statements were hearsay, counsel only argued why they were useful, not that they were nonetheless admissible because they were reliable and trustworthy. Thus, this contention is unpreserved. *See Phillips v. People*, 2019 CO 72, ¶ 12 ("To preserve a claim for review on appeal, the party claiming error must have supplied the right ground for the request." (quoting *Novak v. Craven*, 195 P.3d 1115, 1120 (Colo. App. 2008) (alteration omitted))).

### 2. Standard of Review and Applicable Law

¶ 33 "We review all evidentiary rulings for an abuse of discretion." *People v. Abad*, 2021 COA 6, ¶ 8. "A trial court abuses its

discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law." *Id.*

¶ 34     "[O]nly errors that specifically and directly offend a defendant's constitutional rights are 'constitutional' in nature." *Wend v. People*, 235 P.3d 1089, 1097 (Colo. 2010). We review an evidentiary ruling for constitutional harmless error only when, under the circumstances of the case at hand, it "effectively barred the defendant from meaningfully testing evidence central to establishing his guilt." *Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo. 2009).[3] However, we review an evidentiary error that does not deny a defendant "virtually his only means of effectively testing significant prosecution evidence" for nonconstitutional harmless error. *Id.* at 1062-63. Additionally, we review Xia's unpreserved indicia of reliability argument for plain error. *See Hagos*, ¶ 14.

¶ 35     An otherwise inadmissible hearsay statement

> having equivalent circumstantial guarantees of trustworthiness, is not excluded by the

---

[3] Xia argues that *Krutsinger v. People*, 219 P.3d 1054 (Colo. 2009), was wrongly decided and that we should not follow it. But *Krutsinger* considered the United States Supreme Court Supreme Court precedent on which Xia relies, and all of the cases he cites predated *Krutsinger*. Under these circumstances, we decline to second-guess that decision.

hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

CRE 807.

### 3. The Trial Court Did Not Err By Rejecting the Recorded Statements

¶ 36    Xia admits that the evidence he sought to introduce — recordings of J.X.'s and J.F.'s statements to the police that no prostitution was occurring at the Rose Spa — is hearsay. But he argues that his constitutional right to present a defense trumps the rules of evidence.

¶ 37    It's true that "[f]ew rights are more fundamental than the right of the accused to put before the jury evidence that might influence the determination of guilt." *People v. Scearce*, 87 P.3d 228, 233

21

(Colo. App. 2003). "However, the right to present a defense is not absolute. Ordinarily, it requires only that the accused be permitted to introduce all relevant and admissible evidence." *Id.* (citations omitted). "Thus, the right to present a defense does not guarantee a defendant a right to question witnesses in violation of the rules of evidence or to produce inadmissible hearsay." *Id.*

¶ 38    Xia relies on *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973), in support of his constitutional argument. But that reliance is misplaced. In that case, the United States Supreme Court concluded that "the exclusion of [a piece of] critical evidence, coupled with the State's refusal to permit [the defendant] to cross-examine [a witness], denied him a trial in accord with traditional and fundamental standards of due process." *Id.* But unlike the Mississippi evidentiary rules at issue in *Chambers*, Colorado's Rule 807 does provide a pathway for the admission of reliable but otherwise hearsay evidence. Xia's counsel just never asked the court to apply that rule or any other hearsay exception. *See* CRE 803, 804. And unlike the defendant in *Chambers*, Xia's attorney never attempted to call and question J.X. or J.F. as witnesses on Xia's behalf. So we can't say on this record that Xia

22

was denied "a trial in accord with traditional and fundamental standards of due process." *Chambers*, 410 U.S. at 302.

¶ 39 Lastly, Xia argues that the court should have sua sponte admitted the recorded statements as trustworthy under a hearsay exception his counsel didn't raise. But Xia doesn't explain on appeal why the error should have been obvious to the trial court. Rule 807 contains multiple requirements that must be satisfied before a court can admit otherwise inadmissible hearsay, many of which are inherently factual. For example, the rule requires that "the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." CRE 807. Xia doesn't explain on appeal how this requirement is satisfied, and he doesn't explain why the trial court should have divined that fact without the benefit of argument. This is particularly true for two witnesses whose testimony the trial court hadn't even heard.

¶ 40 On this record, then, we perceive no abuse of discretion or plain error in the trial court's exclusion of J.X.'s and J.F.'s recorded statements.

### III.  Disposition

¶ 41   The judgment is affirmed.

JUDGE J. JONES and JUDGE MOULTRIE concur.